# STATE OF VERMONT

# ENVIRONMENTAL COURT

| | | |
|---|---|---|
| **Huntington NOV Appeal** | } } } | **Docket No. 204-8-06 Vtec** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **Town of Bradford,** **Plaintiff,** **v.** **George Huntington,** **Defendant.** | } } } } } } } } | **Docket No. 209-9-06 Vtec** |

## Decision on the Merits

These consolidated cases address the legality of past and proposed uses of a small parcel of land at the intersection of Vermont Routes 25 and 25B in the Town of Bradford. A permit authorizing the sale of used autos on this property was issued in 2002, but such use became non-conforming when the Town of Bradford (Town) amended its zoning regulations in 2003. A dispute arose when the present owner of the property leased it in 2006 for commercial use, relying on the previously-approved permit.

Docket No. 204-8-06 Vtec concerns Appellant George Huntington's timely appeal from a decision by the Town of Bradford Zoning Board of Adjustment (ZBA) to uphold a notice of violation for operating a commercial enterprise without a permit. The second pending case, Docket No. 209-9-06 Vtec, concerns the Town's efforts to enforce that same violation notice and obtain injunctive relief and monetary damages from Mr. Huntington.

On April 25, 2007, this Court issued its Decision on the parties' cross-motions for summary judgment. While the Court determined that neither party was entitled as a matter of law to pre-trial judgment, the Court did announce its determination of several legal issues that remain pertinent to the issues presented at trial, including the following:

1. The 2002 zoning permit authorizing used auto sales that was issued to a prior owner and lessee of Appellant's property (Town Exhibit A; hereinafter referred to as the "2002 Permit") may be the basis for authorizing similar use of the property, under the doctrine of lawful, pre-existing, non-conforming uses, provided such use was neither abandoned nor expanded beyond that authorized by the prior

permit. See <u>Huntington NOV Appeal</u>, Docket No. 204-8-06 Vtec, slip op. at Pp. 3–5 (Vt. Envtl. Ct. April 25, 2007) (J. Durkin) (hereinafter referred to as the "2007 Decision").

2. The zoning amendments enacted by the Town in 2003 changed the applicable zoning district from the Neighborhood Commercial District to the Residential District. This zoning district change transformed the use authorized by the 2002 Permit into a use that no longer conformed with the Town of Bradford Zoning Bylaws ("Bylaws"). <u>Id</u>. at 2. Those Bylaws, as amended in 2003, are the municipal zoning regulations that control these violation and enforcement actions.

3. Any use conducted on Appellant's property beyond that authorized by the 2002 Permit would not be regarded as a lawful, pre-existing, non-conforming use. <u>Id</u>. at 4–5 and 8–9.

4. Appellant assumes the burden of proving that the lawful, pre-existing, non-conforming use of his property has been uninterrupted for no more than two years, so as to avoid a claim of abandonment of the authority that the pre-existing non-conformity confers, as directed by Bylaws § 6-7(C). Id. at 7–8.

The Court conducted a hearing on the merits of both proceedings on October 19, 2007. The parties requested the opportunity to file post-trial memoranda and replies thereto, the final filing of which was received by the Court on December 17, 2007. The Court thereafter began its research and deliberation on the merits.

The Town continues to be represented in both proceedings by Paul Gillies, Esq.; Mr. Huntington continues to be represented by Marc Nemeth, Esq.

Based upon the evidence admitted at trial, including that put into context by the site visit the Court conducted with the parties on the morning of the trial, we make the following factual findings:

**Factual Findings**

1.     George Huntington ("Appellant") owns the 0.33± acre property at 1660 Waits River Road in the Town of Bradford, located at the junction of Vermont Routes 25 and 25B (the "Property"). Appellant purchased the Property in August, 2005.

2.     In 2006 and until sometime last year, Appellant leased the Property to First Trust Vermont Corporation ("First Trust Vt."). The lessee intended to use the property for the storage, sale, and repair of used motor vehicles.

2

3. Neither Appellant[1] nor his lessee, First Trust Vt., received a municipal permit to change or expand the uses conducted on the Property. Their separate or joint representations were to rely upon the 2002 Permit as the authority for First Trust Vt.'s planned use of the Property.

4. It was unclear from the evidence admitted at trial whether First Trust Vt. ever actually conducted commercial activities on the Property subsequent to its lease with Appellant. First Trust Vt. was unable to receive the required authorization from the Vermont Department of Motor Vehicles ("DMV") to sell used autos—and obtain the requisite "dealer plates"—due to a variety of issues, including its inability to obtain verification from the Town of what zoning authority, if any, it had to operate a used auto sales facility on the Property.

5. Appellant allowed or authorized the following commercial activities to occur on the Property: the display and sale of used motor vehicles; the storage or sale of large excavation equipment; the storage of trailers and other items; yard sales; and the repair of vehicles and motorcycles. These commercial activities frequently occurred within the highway rights-of-way and setbacks.

6. Prior to Appellant's purchase of the Property from Mr. Bill Lowery, the Property had been leased to Jim Moorcroft, d/b/a Pride Auto East.

7. On August 27, 2002, the Town issued a zoning permit to Jim Moorcroft, d/b/a Pride Auto East, authorizing the operation of a used auto sales business. At the time this permit was issued, the Town of Bradford Zoning Regulations (Regulations) identified the property as being located in the Neighborhood Commercial District. Auto sales were then regarded as a permitted use for properties in this district.

8. The evidence offered at trial was not clear on the activities of Mr. Moorcroft, lawful or otherwise, on the subject property. The credible evidence did not convince the Court that Mr. Moorcroft, during his tenure on the Property, engaged in the sale of large excavation equipment, motorcycles or other items such as those commonly sold in yard sales.

9. To the extent that Mr. Moorcroft sold used autos within the highway right-of-way or setback from the highway right-of-way, such activities were deemed unlawful by the unappealed

---

[1] Appellant actually applied for a new zoning permit on September 6, 2006, but by letter dated September 13, 2006, withdrew his application and noted that "[f]or the time being we will conduct business with the existing permit and do not intend to modify its use." Town Exhibit S-1. We understand the "existing permit" to which Appellant referred to be the 2002 Permit, referenced above.

zoning violation the Town issued to him and the then property owner, Mr. Lowery. See Town Exhibit E.

10. Mr. Moorcroft terminated the sale of used autos on the Property on August 31, 2004, when the dealer license he received from the Vermont DMV expired and was not timely renewed. To lawfully sell used autos in Vermont, one must hold a valid dealer license issued by the DMV. 23 V.S.A. § 473(a).

11. Although not specifically clear from the evidence Appellant offered, it appears Mr. Moorcroft may have stored used autos on the Property until late March, 2005.

12. In 2003, the Town revised its Regulations, thereby changing the zoning district boundaries. The subject property was thereafter located in the Residential District, which did not allow commercial uses of property.

13. On June 20, 2006, the Town of Bradford Zoning Administrator ("ZA") issued a zoning violation notice[2] to Appellant. The 2006 notice alleged that Appellant was allowing "a commercial enterprise [to be operated on the Property] without benefit of permit, including, but not limited to, parking vehicles offered for sale within the Vermont highway right-of way [sic] of Route 25B." We hereinafter refer to this violation notice as the "2006 NOV."

14. A Vermont highway right-of-way is generally assumed to be three rods[3] wide. 19 V.S.A. § 32; see also Town of South Hero v. Wood, 2006 VT 28, 179 Vt. 417 (2006). The credible evidence at trial supported an application of this assumed width of the specific right-of-way for Route 25B as it abuts the Property. Using this measurement, the neighbors who testified at trial estimated where the Route 25B highway right-of-way extended onto Appellant's Property and convinced the Court that during the term of Appellant's ownership, including after he received the 2006 NOV, yard sales were conducted and motorcycles, excavation equipment and other miscellaneous sale items were stored and displayed for sale on the Property and within the Route 25B highway right-of-way.

15. Mr. Huntington timely appealed the 2006 NOV to the Town of Bradford Development Review Board ("DRB"). The DRB upheld the 2006 NOV. Mr. Huntington thereafter appealed

---

[2] As noted in our prior Decision, the ZA had issued several prior notices of violation concerning the Property to the prior owner. Such prior notices of violation are not material to these proceedings, other than for the legal precedent articulated in our prior Decision. See 2007 Decision at 5–6.

[3] A "rod" was once a measurement commonly used when describing real estate or roads. A rod is defined as measuring 5½ yards or 16½ feet. Black's Law Dictionary, Eighth Ed. (2005).

4

to this Court, which appeal is the subject of Docket No. 204-8-06 Vtec. In Docket No. 209-9-06 Vtec, the Town seeks enforcement, injunctive relief and the imposition of penalties as a consequence of the zoning violations Appellant has allowed to occur on the Property.

16.     The commercial activities referenced in ¶ 5, above, continued on the Property for several months after Appellant received the 2006 NOV. Specifically, the yard sales continued to occur on weekends for several months; trailers continued to be parked on the Property; and excavation and other pieces of motorized equipment continued to be parked and offered for sale on the property, including within the highway rights-of-way and setbacks during the summer and into the fall of 2006.

**Discussion**

As we begin to announce our legal conclusions pertinent to the two pending cases, we do not believe it necessary to delve in great detail into the legal analysis contained in our 2007 Decision that remains relevant to the merits of these cases. Rather, we refer the reader to that 2007 Decision for an explanation of our legal conclusions as to (1) the limitations of non-conforming uses (Id. at 3–5); (2) whether the prior non-conformity has been abandoned pursuant to Bylaws § 6-7(C) (Id. at 7–8); and (3) whether the 2006 NOV-- while not a "model of clarity"-- gave adequate notice that the commercial activities Appellant allowed to occur on the Property were prohibited by Bylaws § 3-8, not otherwise authorized and constituted one or more zoning violations (Id. at 8–9).

The pending appeal hinges on what authority remains from the 2002 Permit for commercial use of the Property, since Appellant did not seek or obtain a new permit. Rather, he has consistently argued that the uses he has allowed on the Property are authorized by the 2002 Permit. As a point of reference, we note that the amended Bylaws do not provide for commercial uses as either a permitted and conditional use in the Residential District. Bylaws §§ 3-8(C)–(D).

## I.     Rights-of-Way and Setbacks:

Bylaws § 3-8(E) establishes "setbacks" for "Land, Area, and Structural Requirements" in the Residential District as being "30 feet from edge of [the public highway] right-of-way."

While contested,[4] the credible evidence at trial established that the right-of-way for Vermont Route 25B measured about twenty-four and three quarters feet from the highway center line and that Appellant allowed yard sales to occur and equipment items to be stored and displayed for sale within this right-of-way and setbacks on his Property. Such use of his Property was not authorized by the 2002 Permit and was specifically deemed illegal by the 2004 NOV. While the Town does not seek relief against Appellant based upon the 2004 NOV (nor could it, since he did not then own the Property and did not receive notice), the 2004 NOV provides a conclusive reference as to what cannot now be claimed to be a lawful, pre-existing, non-conforming use. 2007 Decision at 5–6.

Some argument was made at trial that setback limits relate solely to buildings and not uses on land. The Bylaws are less than clear in this regard. See Bylaws § 3-8 (which establishes a thirty-foot setback "from edge of right-of-way" as the "Land, Area, and Structural Requirement" for the Residential Zoning District.[5]) But the more appropriate legal analysis is what authority, if any, Appellant has for such setback use, not whether the Bylaws would allow for such use.

## II.    Applicability of 2002 Permit and 2004 NOV:

Bylaws § 2-1 requires a party to apply for and receive a zoning permit for all "land development," the definition for which includes "any change in use . . . or extension in use of land." Id. The question of whether the commercial uses Appellant allowed to occur on his Property constituted a zoning violation, particularly the specific violation for which the Town gave notice, is simplified by the fact that Appellant chose not to obtain a zoning permit. The only authority Appellant asserts for the commercial use of his property is the use authorized by the 2002 Permit, later made non-conforming by the 2003 Bylaw amendments. But the 2002 Permit nowhere specifically authorizes any commercial uses of the areas on Appellant's Property located within the highway right-of-way or setback areas, and such uses of the right-of-way and setback areas were specifically determined to be unlawful, by virtue of the unappealed

---

[4]  Appellant primarily based his contest on the location of the right-of-way limits on the fact that he didn't know where they were. He did not present evidence at trial that he put sufficient effort into learning where the right-of-way limits were located on his property.

[5]  The language of the title to Bylaws § 3-8(E) suggests that the setback and other listed "Requirements" relate to more than just structures. But we need not definitively resolve this legal issue, since Appellant cannot claim that he has a permit authorizing commercial uses inside the setback area.

2004 NOV. Appellant is correct that the 2004 NOV cannot be the basis for determining what may now be permitted under the amended Bylaws; but the 2004 NOV does provide limits upon a continuation of the use authorized by the 2002 Permit, later made non-conforming by the 2003 Bylaw amendment.

To be regarded as the authority to continue using property in a way that no longer conforms with the current zoning bylaws, such prior use must have been lawful; that is, not in violation with the then-existing zoning bylaws. 24 V.S.A. § 4408(1); 2007 Decision at 5–6. The 2004 NOV specifically asserted, and ultimately formed the basis for the legal conclusion that commercial activity within the highway right-of-way and setback areas was not then lawful, thus evaporating whatever basis the 2002 Permit may contain for the then-lawful use of these areas on Appellant's Property. Appellant is therefore barred in this proceeding from asserting that he, his business invitees or other possessors of his Property have authority to conduct commercial activity within these highway right-of-way and setback areas.

## III.    2006 NOV:

We therefore arrive at the legal conclusion that Appellant allowed unpermitted uses of his Property to occur after receiving the 2006 NOV. Specifically, we conclude that Appellant allowed commercial activities, including yard sales and the storing, offering for sale and repairing of motorcycles, trailers and large excavation equipment for a period from late spring through the fall of 2006. To determine the specific period of violation, we count from the expiration of the time the Town afforded in its 2006 NOV for Appellant to cure until the last day that such equipment occupied these areas on the Property (i.e., June 27, 2006 to December 1, 2006). Thus, we calculate this period of violation to include a total of 156 days. We now must determine the appropriate response to these violations, given that each day that a violation occurred constitutes a separate offense. 24 V.S.A. § 4451(a).

## IV.    Civil Fines and Other Relief:

This Court has "broad discretion" in determining what remedy should be afforded when a zoning violation, after due notice, persist. City of St. Albans v. Hayford, 2008 VT 36, ¶ 18. In making our determination here, we note several aggravating factors, including Appellant's persistence in claiming he needed no further permit, in allowing the use of his property to extend beyond the uses that could legitimately be claimed as continuations of lawful, pre-existing, non-conforming uses, and in causing the Town to vigorously prosecute these violations. In

7

determining this last aggravating factor, we do not intend to dampen the sincere exercise of the rights of property owners to defend against illegitimate claims of zoning infractions. However, we cannot ignore the expense to municipalities in fulfilling their police-power responsibilities of enforcing zoning regulations. When a municipality prevails in a contested zoning enforcement proceeding, a civil fine premised upon the costs a municipality incurs has been viewed as proper. Hinesburg v. Dunkling, 167 Vt. 514, 527–8 (1998) ("the use of the fine provision in § 4444(a)[6] to reimburse towns for the cost of enforcement is contemplated by the statute and is rationally related to the damages suffered from landowner's violation of Town's bylaw.") (citing United States v. Halper, 490 U.S. 435, 453 (1989).

In the cases at bar, the Appellant has not contested the legitimacy of the Town's assertion that it has incurred legal fees, service fees and court filing expenses in the amount of $6,904.42 and that such fees are reasonable, given the extent of this contested litigation. We therefore conclude that this total is a legitimate basis for determining what an appropriate civil fine should be for each day that we have concluded a violation occurred.

We also note that there are several mitigating factors in Appellant's favor. Most important, we note that Appellant has caused the zoning violations on his property to cease, and did so prior to the site visit and court trial. While we regard these violations as serious, they are by no means the most egregious violations this Court has been required to assess. In this regard, we note that we are authorized to impose a civil fine of "not more than $100.00 for each offense." 24 V.S.A. § 4451(a). We interpret this authorization as suggesting that we reserve a fine of $100.00 per day for the most egregious of zoning infractions. Lastly, while we reject Appellant's assertion that he should not be held responsible for the zoning transgressions of others visiting his property,[7] we note that the undisputed testimony, which we found credible, was that Appellant was unable to reap any financial remuneration from the tenants or occupants that committed these zoning offenses. We balance the conflicting evidence into a conclusion that while Appellant may have been directly responsible for some of the zoning infractions that occurred on his property that were noticed by the 2006 NOV, he clearly was not a direct

---

[6] Section 4444(a) was where the zoning enforcement fine provisions were once codified. In the Permit Reform Act of 2004, the fine provisions were transferred to 24 V.S.A. § 4451(a), much in the exact same form.

[7] See City of St. Albans v. Hayford, 2008 VT 36, ¶ 14, in which our Supreme Court noted that civil fines and injunctions are an appropriate response to zoning violations, even where it has not been determined that the property owner engaged in "conscious wrongdoing."

8

contributor to all of them. Thus, we conclude that $38.00 per day is an appropriate civil fine for the zoning violations that occurred on Appellant's property that were sufficiently noticed in the 2006 NOV and occurred for the 156 days after Appellant received that notice. Our conclusion here results in a civil fine being assessed against Appellant and in favor of the Town in the total sum of $5,928.00.

We also conclude that Appellant's assertion that he was the victim of unlawful selective prosecution is without merit. His evidence on this point failed to meet the burdens of proof articulated in In re: Appeal of Letourneau, 168 Vt. 539, 549 (1998), which, citing to Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886), noted that a complaining landowner must "show more than that the municipality has failed to enforce the zoning ordinance in similar circumstances. . . . [T]he landowner must meet a two-part test: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Letourneau, 168 Vt. at 549 (citations omitted).

At the time of the filing of its Complaint, the Town sought injunctive relief against Appellant and has not withdrawn that relief prayer, even though Appellant, his tenants or other occupiers apparently removed the offending items for the rights-of-way and setback areas on the Property well in advance of the site visit and trial. Nonetheless, we conclude that an injunction barring the specific use noticed as a zoning violation, both in 2004 and 2006, is appropriate here, so as to safeguard against a reoccurrence of the violations and tensions between the parties that have been the subject of this extended litigation. Thus, the Judgment Order that accompanies this Decision bars Appellant, his successors, assigns, invitees and other occupiers from conducting commercial activities within the highway rights-of-way and setback areas on the Property without first obtaining a zoning permit.

**V.    Abandonment:**

Lastly, we are aware that the parties briefed and have encouraged this Court to determine what now remains of the authority, if any, that originated when the 2002 Permit was issued to Appellant's predecessor in title. We trust that we have already provided the parties with some guidance in our discussion here. However, we specifically refrain from addressing what use remains authorized on the Property, and whether such use was abandoned when the prior tenant

9

lost his right to lawfully sell used autos on the Property on August 31, 2004, since these legal issues are beyond the scope of the 2006 NOV. To address these issues would require this Court to go beyond the scope of the specific case and controversy that has been presented to us in this NOV appeal and original enforcement action; we would be guilty of rendering an advisory opinion. In re Appeal of 232511 Investments, Ltd. d/b/a Stowe Highlands, 2006 VT 27, ¶ 19, 179 Vt. 409, 417. To make such a ruling would require us to assume (or ignore) facts not in evidence and not yet specifically presented to the appropriate municipal panel; this is the practical foundation of the prohibition against advisory opinions. We do not intend to violate that prohibition in this proceeding.

## Conclusion

For all the reasons stated above, we hereby **AFFIRM** the June 20, 2006 notice of violation issued by the ZA and impose a civil fine of **$38.00 per day**, totaling **$5,928.00,** in favor of the Town and against Appellant for a total of 156 days after he received notice and an opportunity to cure the noticed zoning violations, specifically for allowing commercial activities to occur within the highway right-of-way areas of his Property and do hereby **ENJOIN** Appellant, his successors, assigns, business invitees and other occupants of his Property from allowing commercial activities to occur within such right-of-way and setback areas without first obtaining a zoning permit from the Town, authorizing such commercial use.

A Judgment Order accompanies this Decision. This completes the proceedings before this Court in both of the above-referenced Dockets.

Done at Berlin, Vermont this 18th day March, 2008.

_____
Thomas Durkin, Environmental Judge

10