STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Town of Brattleboro, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 132-6-08 Vtec |
| | } | |
| Stephen Lawrence, | } | |
| Defendant. | } | |
| | } | |

### Decision and Order as to Penalties and Remedy

The Town of Brattleboro brought this enforcement action against Defendant Stephen Lawrence, alleging that he had changed the use of his property at 15–17 Elm Street "from an eight-family dwelling to a nine-family dwelling without a zoning permit" and alleging that he had violated two conditions of Zoning Permit No. 2003-096 regarding fire lanes on the subject property.

The Town is represented by Robert M. Fisher, Esq.; Defendant Lawrence (Defendant) has appeared and represents himself. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, to take evidence on only those issues revived by the Court's September 23, 2008 entry order, which reopened the default judgment order as to the appropriate remedy and penalty, but not as to the existence of the violations. The parties were given the opportunity to submit written memoranda and requests for findings.[1] Upon consideration of the evidence and of the

---

[1] Defendant's responsive memorandum filed on December 14, 2009, contained a reference to settlement discussions; it was returned to him on January 6, 2010, by the Court Manager, who gave him until January 15, 2010, to file a revised or replacement document. As Defendant did not file any replacement document, the Court Manager

written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Defendant owns property containing a building at 15–17 Elm Street in the Town of Brattleboro.[2] The property had been the subject of a prior enforcement case in Environmental Court, Docket No. 207-12-01 Vtec, in which Defendant was found to have violated the Town of Brattleboro Zoning Ordinance by constructing an addition to the building and "thus changing the use from an existing four[-]family dwelling to a five[-]family dwelling without a valid zoning permit." Town of Brattleboro v. Lawrence, Nos. 206-12-01 & 207-12-07 Vtec, slip op. at 1 (Vt. Super. Ct. May 5, 2003) (Wesley, J.).[3] The Town's later petition for contempt in Docket No. 207-12-01 Vtec was settled by the parties in a consent order entered on April 15, 2005; compliance with that order resulted in the issuance of Zoning Permit No. 2003-096, issued by the Zoning Administrator on October 4, 2005. Zoning Permit No. 2003-096 authorized Defendant to change the use of the Elm Street property from a four-family dwelling with retail to an eight-family dwelling with retail, in conformance with a June 16, 2003 decision of the Development Review Board (DRB). The retail unit is also referred to as the "storefront" unit.

_____

redacted the impermissible sentence in the December 14, 2009 document, and placed the redacted document in the file as of February 4, 2010.

[2] During the events at issue in this case, the numbering of the building and the numbering of the apartments within it was changed to conform to the numbering required by revisions to the state's emergency 911 telephone system. The Notice of Violation refers to the building as 15–17 Elm Street; several of the fire inspection documents refer to it only as 17 Elm Street or only as 15 Elm Street.

[3] In addition, the same decision addressed a consolidated case, Docket No. 206-12-01 Vtec, in which Defendant was found in violation of the Zoning Ordinance for constructing an addition to another property in Brattleboro, which changed that property's use from an existing four-family dwelling to a four-family dwelling with an office, without first obtaining a valid zoning permit for that change.

Procedural History

On February 28, 2008, the Zoning Administrator issued a Notice of Violation to Defendant, stating as the violation that the property had been changed in use from an eight-family dwelling with retail to a nine-family dwelling without obtaining a zoning permit as required by § 1320 of the Town of Brattleboro Zoning Ordinance. The Notice of Violation also stated violations of two conditions of Permit No. 2003-096: Condition # 1, requiring that all fire lanes on the property "must be delineated, maintained[,] and remain unobstructed at all times," and Condition # 8, requiring that "the south side of the building shall be posted as a fire lane." The Notice of Violation stated that "[f]or the purpose of applying financial penalties, your first violation shall be deemed to have occurred on the date of this Notice," that is, on February 28, 2008.

Defendant did not appeal the Notice of Violation to the DRB and it became final. 24 V.S.A. § 4472(d). It therefore cannot be challenged, either directly or indirectly. See Town of Northfield v. Drown, No. 218-10-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. Sept. 4, 2009) (Durkin, J.) ("Because Defendants failed to appeal any of their respective NOVs to the ZBA, the fact of the violations stated in those NOVs cannot now be challenged, either directly or indirectly, in any subsequent proceeding, including [a later enforcement action]." (citing City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588-89 (2000) (mem.))).

The Town filed its complaint in this enforcement action with the Court on June 30, 2008, and served it on Defendant on July 2, 2008. The complaint included an affidavit that was signed on June 27, 2008; as of the date of that affidavit, Defendant had not filed any applications to amend the zoning permit applicable to the 15–17 Elm Street property, Permit No. 2003-096.

Paragraph 12 of the complaint alleged that Defendant "remains in violation of the zoning by[]law, as he has not cured the defect, nor applied for a zoning permit or

3

variance." The complaint sought injunctive relief to "restore the property to its use as a[n] eight-family residential building with retail," as well as to comply with the two fire-lane-related conditions of the permit; sought "appropriate fines" from February 28, 2008, the date the Notice of Violation was issued; and sought "reasonable attorney's fees and costs."

Defendant failed to file an answer. The Town moved for default on July 28, 2008, and filed a revised affidavit as to attorney's fees on August 6, 2008. The August 6 affidavit stated that, as of August 5, 2008, the Town had incurred a filing fee in the amount of $225, service of process fees in the amount of $50, and attorney's fees in the amount of $1000, billed at a rate of $200 per hour. The Town proposed a judgment order to enjoin the violation, to restore the property to its eight-unit-plus-retail approved use, and to require compliance with the fire-lane requirements of the permit. The Town also proposed a fine of $100 per day from February 28, 2008, until the property would be brought into compliance, plus reimbursement of its $1000 in attorney's fees, $225 in filing fees, and $50 in service fees.

On August 7, 2008, the Court granted the Town's motion for default and issued a Judgment Order making findings as to the violation. Paragraph (a) of the Judgment Order required Defendant to restore the property to its use as an eight-family residential building with retail, as well as to comply with the requirements of the permit to delineate, maintain, post, and keep unobstructed the fire lanes on the property.

Paragraphs (b) and (d) of the Judgment Order addressed penalties for past violations. Paragraph (b) required Defendant to

> pay a penalty of $25 per day for the past violation, from March 7, 2008 (the cure date allowed in the Notice of Violation) to the date of this order, for a total of $3,800, compensating the Town for its attorney's fees of $1,000 and in recognition of the economic benefit accruing to Defendant from renting or using the additional dwelling unit.

4

Paragraph (d) required Defendant to pay to the Town "$275.00, representing $225.00 in filing fees, plus $50.00 for service of process."

Paragraph (c) of the Judgment Order imposed a prospective, coercive penalty to pay daily fines of $100, beginning on the date on which Defendant would be served with the Judgment Order, until the property would be brought into compliance.

At some time between service of the complaint on Defendant, and Defendant's filing of his Motion to Reopen, the Town's attorney informed Defendant that he could come into compliance either by removing the kitchen and sleeping accommodations in the storefront unit as evidence that it was no longer a residential unit, or by obtaining zoning approval of the conversion of the storefront unit to a residential unit.

On August 21, 2008, Defendant filed a "Motion to Reopen" the default judgment, describing his actions in response to the Notice of Violation and his efforts to contact the Town's attorney after the service of the summons and complaint. On August 22, 2008, Defendant filed an application to convert the storefront into a residential and a commercial unit. The Town had Defendant served with the Judgment Order on August 26, 2008, at an additional service fee of $50.42.

The Town opposed Defendant's Motion to Reopen, stating that "the violations are established and the only matters before the court are the enforcement remedies." Town's Opposition to Motion to Reopen, at 2 (Sept. 5, 2008). The Town also stated that Defendant had obtained and "filed an application for conversion of the storefront into two units—one for residential and one for commercial." Id.

On September 23, 2008, the Court granted in part and denied in part Defendant's motion to reopen the default judgment. The Court denied the motion as to the existence of the violation; the existence of the violation could not be contested as no appeal had been filed of the earlier Notice of Violation. 24 V.S.A. § 4472(d). The Court granted Defendant's motion as to the appropriate remedy and penalty for the violations, and scheduled a telephone conference to discuss whether a hearing would

5

be necessary to determine the duration of the violation, and to discuss the relationship of any such hearing to Defendant's pending application referred to in the Town's memorandum.

Neither party was available when called for the telephone conference scheduled in mid-October, and it was rescheduled and held on October 20, 2008. At that conference, the reopened proceedings as to remedy and penalty were placed on inactive status, by agreement of the parties, during the DRB's consideration of Defendant's then-pending application for approval of nine residential units plus one commercial unit in the building. The Town's attorney was directed to inform the Court when the decision on that application had been issued by the DRB.

In November 2008, the Town's attorney informed the Court staff that the application was to be heard by the DRB in January 2009. In February 2009, the Town's attorney informed the Court staff that the application was then expected to be considered by the DRB at its February 18, 2009 meeting. Defendant failed to appear at the February 18, 2009 DRB hearing, and the DRB denied the application. However, neither party informed the Court staff of that fact until a telephone conference held with the Environmental Court Case Manager on April 20, 2009. Defendant did not appeal the DRB's denial, and stated that he intended instead to submit an additional application addressing the issues for which the DRB had denied the previous application.[4]

However, Defendant did not in fact submit any further applications, and the remaining matters in the enforcement case were scheduled for trial in early September 2009. At the request of the Town, the trial was rescheduled for and held on November 10, 2009. Post-hearing filings were submitted through December 14, 2009. See footnote

---

[4] Regardless of Defendant's reasons for neither attending the DRB hearing nor requesting it to be rescheduled, the DRB's denial of the application is not before the Court in the present proceeding because he did not appeal that DRB decision.

6

1, above.

<u>Residential Use of the Storefront Unit</u>

Zoning Permit No. 2003-096 approved the subject property for eight residential units (apartments) plus one commercial/retail unit, the storefront unit. During a state fire prevention inspection that took place on February 12, 2008, conducted by Assistant Fire Marshal Brian J. Johnson and accompanied by Defendant, the inspector noted several deficiencies as to smoke detectors and carbon monoxide detectors in several of the units. The inspector also noted that Apartment 3 was under construction. As to the storefront unit, he noted, among other things, that it was "now [an] ap[artmen]t" and that it was missing a smoke detector in the "bedroom."

A fire occurred at the property in Apartment 7 a few days later, on February 16, 2008, at approximately 9:15 a.m. As reflected in the Fire Chief's testimony at trial, in the Fire Department's narrative of the fire (Ex. 5), and in the first state Division of Fire Safety inspection results on the day of the fire (Ex. 7), an occupant residing in the storefront unit, Joanne Williams, was present in the building and was evacuated from the storefront unit due to the fire.

As of February 16, 2008, when the fire occurred, the Fire Department counted the building as having nine residential units, including the storefront unit. The storefront unit was occupied as a residential unit by three individuals: Shannon Dessaint, Dessaint's daughter, and Joanne Williams; Apartment 3 was under construction and unoccupied; and all other residential units were shown to be occupied as of that date. Due to the fire, the Fire Department evacuated the occupants of all the units, and the Town provided them with alternative lodging at motels in the area until each of their respective apartments in the building was cleared for occupancy.

The storefront unit contained a fully functional bathroom, including a shower, sink, and toilet, a room with a bed or mattress used for overnight accommodations, and

7

a kitchen. Defendant testified at trial that the kitchen sink had been removed a year prior to the fire.

The Notice of Violation issued to Defendant on February 28, 2008, stated that "for the purposes of applying financial penalties, your first violation shall be deemed to have occurred on the date of this notice." Defendant restored the signs posting the south side of the building as a fire lane shortly after the February 28, 2008 Notice of Violation. In the present proceedings, the Town does not suggest that the fire lane violations persisted or recurred after the seven-day period to cure given in the Notice of Violation.

During an inspection conducted by Assistant Fire Marshal Johnson on March 25, 2008, he inspected the storefront unit "for ap[artmen]t use per S. Lawrence," that is, at Defendant's request. The storefront unit's smoke detectors and carbon monoxide detectors passed the inspection, and the inspection report noted that occupancy of the storefront was approved by the state, from the standpoint of fire safety, subject to "permission by Town" for its occupancy.

On June 23, 2008, the Brattleboro Fire Chief, Michael Bucossi, and Lieutenant Marty Rancourt conducted an inspection of Defendant's building at 15 Elm Street, with Defendant's building manager, Scott Hazelton. They inspected Apartment 303 (formerly numbered as Apartment 3), and inspected the storefront unit, which had been renumbered as Unit 101.[5] Apartment 303 was occupied and being lived in, although plumbing had not yet been connected to a water supply in that apartment and it had not yet been approved for occupancy by the state Division of Fire Safety. During the inspection, Mr. Hazelton told them that the occupants of Apartment 303 go downstairs

---

[5] They also inspected Apartment 302 (formerly numbered as Apartment 4), also not then approved for occupancy. It showed no signs of occupancy.

8

to the storefront unit to take showers and use the sink and bathroom facilities.[6]

During the inspection, Chief Bucossi and Lieutenant Rancourt observed evidence that the shower facilities in the storefront unit had been recently used, and also observed the bed, desk, computer, and kitchen facilities in the storefront unit. While they were inspecting the storefront unit, Mr. Hazelton also told them that the owner of the property, Defendant Lawrence, stays in the storefront unit when he is in town; however, no evidence was presented at trial or by affidavit to support any finding as to whether or when Defendant Lawrence used the storefront unit himself for residential purposes after the date of the Notice of Violation.

The Town's file was turned over to the state Division of Fire Safety, which inspected Apartments 302 and 303 and granted full occupancy for both apartments on August 28, 2008. On September 11, 2008, Lieutenant Rancourt conducted a follow-up inspection of the building for the Town and stated that "the last two apartments," that is, Apartments 302 and 303, were "ok to occupy."

On April 28, 2009, the Assistant Fire Chief of the Town inspected the Elm Street property and observed that the so-called ninth unit (the storefront unit) was no longer in use as an apartment, and that Defendant was "trying to rent it to a jewelry store in compliance with his permit." Ex.15.

As of the June 28, 2008 motion for default judgment, the Town had incurred $1000 in attorney's fees, at a rate of $200 per hour. The Town did not present any evidence at trial, or by further affidavit, as to any attorney's fees expended in preparing for and conducting the trial, or in filing its post-hearing memorandum.

---

[6] Based on the June 23, 2008 inspection, the state Department of Fire Safety issued an administrative citation to Defendant and imposed an administrative fine for allowing occupancy of Apartment 303 without prior approval of that occupancy from the state Department of Fire Safety.

Remedy

No additional remedy is necessary in this case beyond that originally ordered by the Court in the August 7, 2008 Default Judgment Order. Because the violation cannot be challenged, even though Defendant has since brought the property into compliance with paragraph (a) of that order, the property should remain subject to a governing court order. Accordingly, the Court hereby reinstates the remedial order from paragraph (a) of the Default Judgment Order, as follows:

> Defendant shall not change the use of the property from the use allowed under Permit No. 2003-096 and the related DRB decision dated June 16, 2003, without first obtaining any required amendment pursuant to the Zoning Ordinance in effect at such time. Specifically, Defendant shall maintain the use of the property as an eight-family residential building with a retail unit; shall delineate, maintain, and keep unobstructed all fire lanes on the property at all times, to the satisfaction of the Fire Chief, as required by Condition #1 of Permit No. 2003-096; and shall post the south side of the building and maintain its posting as a fire lane, as required by Condition #8 of Permit No. 2003-096.

Appropriate Penalty

In a zoning enforcement case, the Court assesses a daily penalty for the period during which the defendant has the benefit of the zoning violation. See 24 V.S.A. § 4451(a) (authorizing the imposition of up to $100 per violation of a zoning bylaw, and establishing that each day that such a violation continues is a separate offense); see also Town of Fairfax v. Beliveau, No. 274-11-08 Vtec, slip op. at 4 (Vt. Envtl. Ct. Jan. 13., 2010) (Wright, J.) ("In a zoning enforcement case, the Court assesses a daily penalty for the period during which the defendant has the benefit of the zoning violation."); Town of Sherburne v. Carpenter, 155 Vt. 126, 133 (1990) ("As long as defendant has the benefit of the zoning ordinance violation, the statute requires that he pay a daily fine."). The fact that Defendant characterizes himself as "for the most part, an absentee landlord," does not relieve him of the responsibility for taking steps to ensure that his property is

in compliance with the Town's zoning ordinance, and with any related permits and approvals, in his absence.

The Court calculates a penalty "to remove the economic benefit and any avoided costs achieved by the defendant from the violation, as well as to compensate the enforcement entity generally for the legitimate costs of bringing the enforcement action." Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.) (citing City of St. Albans v. Hayford, 2008 VT 36, ¶¶ 15–18, 183 Vt. 596). The Court may also consider the factors enumerated in the state environmental enforcement statute. See 10 V.S.A. §§ 8010(b), (c)(2); In re Jewell, 169 Vt. 604, 606–07 (1999) (stating that the "court has discretion . . . not only to balance [a defendant's] continuing violation against its compliance costs but also to consider such factors as those specified in [10 V.S.A. §§ 8010(b) and (c)(2)]"). These factors include whether the defendant had reason to know that the violation existed, the defendant's past record of compliance, the deterrent effect of the penalty, and the enforcement entity's actual costs of investigating and bring the enforcement action. 10 V.S.A. §§ 8010(b)(3), (4), (6), & (7).

In the present case, the Town expended $1325.42 in bringing the enforcement action, which included the filing fee of $225; the costs of service of the complaint, and of the Default Judgment Order, in the amount of $100.42; and the $1000 in attorney's fees incurred by the Town as of the date of the Default Judgment Order. In addition, the Town incurred attorney's fees for the approximately hour-and-a-half of trial in the amount of $300.[7] As stated above, the Town did not present any evidence of attorney's fees expended on trial preparation or post-trial memoranda, and did not present evidence of any expenditure on inspections related to this case.

The Town also has not presented any evidence of Defendant's avoided costs or

---

[7] Although no bill or affidavit was presented by the Town regarding trial preparation time, trial time, or post-trial memorandum time, the Town did present evidence that its attorney's hourly rate was billed at $200 per hour.

economic benefit obtained from this violation. No evidence was presented that, after the fire, Defendant obtained any rent for the storefront, either as a retail space, as a residence, or both. No evidence was presented as to when or whether Defendant himself stayed in the storefront unit during the period of violation. Although one of the June 23, 2008 inspection notes (Ex. 10) suggested that the occupants of Apartment 303 were paying rent to live in that apartment, but was using the bathroom and shower facilities in the storefront unit, no evidence was presented as to the amount of rent collected for Apartment 303. To remove the economic benefit Defendant achieved through this violation, the Court would ordinarily have included in a penalty amount any rent collected by Defendant from the rental of Apartment 303 and the storefront unit during the violation period, together with the avoided costs of a local hotel for any dates on which Defendant himself stayed in the storefront unit. However, in the absence of such evidence, no such avoided costs or economic benefit can be imposed.

Although Defendant cannot contest the fact of the violation, the duration of the violation is relevant to the Court's consideration of a penalty amount. See 10 V.S.A. § 8010(b)(8); Fairfax v. Beliveau, No. 274-11-08 Vtec, slip op. at 4 (stating that the court can consider the duration of the violation in calculating a penalty). Regardless of any period of violation prior to the fire, as well as any period of violation prior to the Notice of Violation, the Notice of Violation itself states the starting date for the assessment of money penalties as February 28, 2008. And even though, as a result of the fire, the storefront unit was not actually occupied for a time, it remained configured as it had been prior to the fire, that is, capable of being used as a residential unit.[8] It was also in

---

[8] Defendant's "Closing Statement" filed on December 1, 2009, argues that Mr. Dessaint leased the store as a commercial space for his sales of "software services," that his daughter only spent afternoons at the store, that the mattress in the back room was just used for her afternoon naps, and that the furniture in the store was "set up with desks, computers, and furniture lending itself to conversation, i.e., couches," so that it gave an impression of being lived in, and that Mr. Dessaint did not in fact move back into the

fact used for residential purposes by the tenants of Apartment 303 before Apartment 303 was cleared for occupancy. Although the Court recognizes that Defendant did not direct that use by the tenants of Apartment 303, he did not prevent that use.

Defendant and his tenants therefore had the benefit of the zoning violation through the March 25, 2008 and June 23, 2008 inspections, through the filing of the complaint at the end of July 2008, and through the filing of Defendant's Motion to Reopen on August 28, 2008.[9] If there had still been a zoning violation due to the residential use of the storefront unit as of September 11, 2008, when the Town's fire inspector inspected the building and cleared the remaining two apartments for occupancy, the Town might have been expected to present evidence as to that fact at trial; however, no evidence was presented to show that the zoning violation still existed as of on that date. Therefore, the Court will use the September 11, 2008 inspection date as the ending date for the duration of the violation, a total of 197 days.[10]

As well as compensating the Town for bringing this enforcement action, in the amount of $1625.42, an appropriate penalty amount must also be sufficient to deter future violation of the zoning ordinance. 10 V.S.A. § 8010(b)(6). In the absence of any economic benefit to Defendant from the violation, and recognizing the limited actual

storefront after it was cleared for occupancy by the Fire Department. The existence of the violation became final upon Defendant's failure to appeal the Notice of Violation, and cannot be challenged in this enforcement action; however, the Court has considered these arguments as to the duration of the violation in its analysis of an appropriate penalty.

[9] The mere fact that Defendant applied on August 22, 2008, for approval of conversion of the storefront unit into two units, a residential unit and a retail unit, does not establish either that it was then being used as a residential unit or that it was not being so used.

[10] The fact that the Town also inspected seven months later, in April of 2009, and found no violation, does not establish a violation during those intervening months, and therefore does not justify the Town's proposed violation period of 435 days. Rather, if the September 11, 2008 inspection had found a violation, it was not reasonable for the Town to delay an inspection until the following April.

residential use of the storefront unit during the period of violation, only a small additional penalty is appropriate. Accordingly, the Court hereby imposes a penalty of $10 per day for the 197 days of violation, for a total of $1970, representing the reimbursement to the Town of its litigation costs and an additional amount to deter future violations of the zoning ordinance. This penalty is well within the available statutory penalty of $100 per day. See 24 V.S.A. § 4451(a).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that based on the violation already determined in the August 7, 2008 Default Judgment and Order, the Court imposes a penalty of $1970, payable to the municipality under 24 V.S.A. § 4451(a), calculated as $10 per day for 197 days, and imposes the following remedial order:

> Defendant shall not change the use of the property from the use allowed under Permit No. 2003-096 and the related DRB decision dated June 16, 2003, without first obtaining any required amendment pursuant to the Zoning Ordinance in effect at such time. Specifically, Defendant shall maintain the use of the property as an eight-family residential building with a retail unit; shall delineate, maintain, and keep unobstructed all fire lanes on the property at all times, to the satisfaction of the Fire Chief, as required by Condition #1 of Permit No. 2003-096; and shall post the south side of the building and maintain its posting as a fire lane, as required by Condition #8 of Permit No. 2003-096.

Done at Berlin, Vermont, this 19th day of February, 2010.

_____
Merideth Wright
Environmental Judge

14