STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION


|  |  |  |
|---|---|---|
| | } | |
| Town of Fairfax, Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 274-11-08 Vtec |
| | } | |
| Leon Beliveau, Defendant. | } | |
| | } | |


Decision and Order on Penalties and Injunctive Relief


Procedural History

In a related case, Docket No. 193-8-08 Vtec, Appellant Leon Beliveau appealed from a decision of the Development Review Board (DRB) of the Town of Fairfax, upholding a Notice of Violation for changing the use of his property at 1166 Main Street from the use category of a single-family dwelling to the use category of a rooming and boarding house, without first obtaining a zoning permit for this change of use.[1] In the above-captioned case, Docket No. 274-11-08 Vtec, the Town of Fairfax brought an enforcement action against Defendant Leon Beliveau for the same violation.[2] The Town is represented by John H. Klesch, Esq.; Defendant Leon

_____

[1] The Court has noted that nothing in the appeal of the Notice of Violation addresses whether the subject property would or would not qualify for a permit for the rooming-and-boarding-house use. Like a single-family dwelling use, a rooming and boarding house is a permitted use category in the Growth Center zoning district in which it is located. However, a rooming and boarding house also requires site plan approval. No such application has been made or appealed; therefore its merits are not before this Court.

[2] The two cases were remanded to this Court by the decision in In re Beliveau Notice of Violation, Nos. 2010-64 and 2010-65, slip op. at 2 (Vt. July 16, 2010)

1

Beliveau (Defendant) is represented by Peter J. McDougall, Esq.

In its September 2, 2011 decision (hereinafter, the September 2011 Decision) in both In re Beliveau Notice of Violation, No. 193-8-08 Vtec and the above-captioned case, the Court determined that Defendant violated the Fairfax Zoning Bylaws by changing the use of his owner-occupied property at 1166 Main Street from the use category of a single-family dwelling to the use category of a rooming and boarding house, without first obtaining a zoning permit for this change of use, by charging for and supplying nine individuals with sleeping accommodations on a month-to-month basis, that is, for fixed periods of time. The September 2011 Decision concluded Docket No. 193-8-08 Vtec, and established the existence of a violation in Docket No. 274-11-08 Vtec.[3] The Court then held a conference by telephone and issued a scheduling order allowing supplemental discovery relevant to the issue of monetary penalty to supplement the evidence taken by the Court on that issue in the earlier phase of the litigation. The scheduling order also set out a briefing schedule on the penalty issue.

After the parties filed further memoranda regarding the extent and nature of the injunctive relief appropriate in this matter, the Court issued an injunctive order in Docket No. 274-11-08 Vtec on October 24, 2011 that required the following:

> 1. Defendant Leon Beliveau shall immediately cease the use of the property at 1166 Main Street in the Town of Fairfax, Vermont, as a rooming and boarding house, as that term is defined in the Zoning Bylaws, [footnote omitted] and shall return the use of the property to

---

(unpublished mem.). On remand, the parties conducted additional discovery, and then agreed that the remanded issues should be bifurcated, with the issue of whether there was a violation again being presented to the Court by cross-motions for summary judgment without a further evidentiary hearing.

[3] The Court suspended entry of a judgment order in Docket No. 193-8-08 Vtec to allow mediation in both cases and to allow any further appeal to be taken from both related cases at the same time.

that of a single-family dwelling, as that term is defined in the Zoning Bylaws, until or unless he obtains a zoning permit for the change in use from that of a single-family dwelling.

2. The Town of Fairfax may have such discovery, including reasonable access to the property upon reasonable notice to Defendant, and including access to Schedule E of Defendant's tax returns regarding this property, as is necessary to determine that Defendant is complying with this injunctive order during the remaining proceedings regarding the penalty in the above-captioned litigation. A further permanent injunction will be incorporated into the judgment order concluding this litigation at that future time.

The parties conducted supplemental discovery and provided to the Court evidence as to the rental payments received by Defendant for occupancy of the subject property during the period October 2, 2010 through October 5, 2011, and evidence as to attorney time expended on this matter from August 17, 2010 through September 7, 2011, and as to attorney's fees billed to the Town from September 8, 2011 through October 11, 2011. Evidence as to earlier periods of occupancy had already been received by the Court.

Shortly after the parties filed their memoranda and reply memoranda regarding the Town's requests for an enforcement penalty and permanent injunction, the Town filed a Motion for Contempt on December 19, 2011, asking the Court to find Defendant in contempt of the October 2011 Injunctive Order for failing to restore the use of the property to that of a single-family dwelling, and to order additional penalties until Defendant terminates all "boarder occupancies" of the property. Defendant was given an opportunity to respond to that motion. To avoid any confusion, the Court will issue a separate decision and order on the contempt motion.

Defendant owns a house at 1166 Main Street (the House) in the Growth Center zoning district of the Town of Fairfax. A single-family dwelling is a permitted use in the district.[4] Appendix B of the Zoning Bylaws defines a dwelling as "[a] building designed or used as the living quarters for one or more families" and defines a family as "[o]ne or more persons living as a household unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels, or hotels." Zoning Bylaws (2007).

The use category of rooming and boarding house is also a permitted use in the Growth Center zoning district. A rooming and boarding house use is defined as "[a]n owner occupied residence where a person or persons, for a fixed period of time are supplied with and charged for meals or sleeping accommodations or both." Id., Appendix B. As well as requiring a zoning permit, a rooming and boarding house also requires site plan approval prior to the grant of a zoning permit because it is other than a single-family or duplex residential use. Id., § 4.12.

On June 5, 2008, the Zoning Administrator issued a formal Notice of Violation to Defendant, referring to an earlier May 22, 2008 warning letter and stating that Defendant was using the House as a rooming and boarding house without obtaining a permit for that use as required by § 2.2.A of the Zoning Bylaws (2007).

As fully explained in the September 2011 Decision, Defendant has supplied and charged for sleeping accommodations for fixed month-to-month terms in his owner-occupied house, which constitutes use as a rooming and boarding house under the Zoning Bylaws. However, Defendant did not apply for a change of use, or

---

[4] The version of the Fairfax Zoning Bylaws applicable to this enforcement case and provided in evidence is the version which became effective in August, 2007. The parties did not advise the Court of any relevant subsequent changes to the Zoning Bylaws during the pendency of this litigation.

receive approval to change the use of the House to a rooming and boarding house from its status as a single-family dwelling. The failure to so constitutes a violation of the Zoning Bylaws, as the Court's September 2011 Decision concluded.

Defendant occupied the House as his own primary residence from 1999 until at least October 25, 2011,[5] when his affidavit reflects that he moved to a nearby house at 1170 Main Street in Fairfax. Since at least January of 2007, Defendant provided sleeping accommodations and charged for and received payments for those sleeping accommodation from occupants of rooms in the house. From at least calendar year 2008 until he moved out of the House, he treated the House for tax purposes as occupied one-sixth as his own residence (as he maintained a bedroom for his own exclusive personal use), and five-sixths as rental real estate.

However, for the purposes of assessing an appropriate monetary penalty for Defendant's zoning violation, the relevant date is measured from 7 days after the June 5, 2008 Notice of Violation was issued, or June 12, 2008, as the statute provides a seven-day opportunity to cure a violation.[6] See 24 V.S.A. § 4451. For the period from June 12, 2008 to July of 2009, a period of 414 days, Defendant received $17,804 in payments from the various occupants of rooms in the House for their sleeping accommodations.

The Court's first summary judgment decision in this matter, issued in July of 2009, found a zoning violation and directed Defendant to cease the use of the

---

[5] Defendant's January 11, 2012 affidavit, attached to his opposition to the Town's Motion for Contempt, asserts that he moved out of the property on October 25, 2011.
[6] Although in the present case the Zoning Administrator gave Defendant until July 21, 2008 to obtain the permit or cease the rooming and boarding house use, to allow sufficient time for the tenants to move out, before the Zoning Administrator would proceed to file the enforcement case, the violation was ongoing during that period as Defendant did not take either action. Therefore, the Court treats the period of violation as commencing after the statutory notice to cure had expired.

property as a boarding and rooming house, until obtaining a zoning permit and any other necessary approvals required to conduct such a use on the property. Following the Court's July, 2009 Order, Defendant did not charge the various occupants of rooms in the House for sleeping accommodations during the three-month period of August, September, and October of 2009.

Defendant thereafter resumed charging the various occupants of rooms in the House for sleeping accommodations. For the period from November of 2009 through September of 2010, a period of 334 days, Defendant received $13,857 in payments from the various occupants of rooms in the House for their sleeping accommodations. For the period from October 1, 2010 through October 5, 2011, a period of 370 days, Defendant received $31,481 in payments from the various occupants of rooms in the House for sleeping accommodations.[7]

Adding the periods of violation together, the total period of violation for which Defendant received payments was 1118 days, or a little over three years. The total amount received by Defendant for providing sleeping accommodations in the House during the period of violation was $63,142, or approximately $56.48 per day.

On October 24, 2011, the Court issued an injunctive order directing Defendant to cease using the House as a rooming and boarding house and to return it to use as a single-family dwelling until receiving approval from the Town to use it as a rooming and boarding house.

In connection with this enforcement matter, through August 20, 2009, the Town incurred $10,920.75 in attorney's fees and $283.93 in court costs and reimbursable attorney's expenses, for a total of $11,204.68. From August 21, 2009 through August 16, 2010, the Town incurred $6,513 in attorney's fees, of which

---

[7] The Town argues that the period of violation should be counted as extending to the date of the October 24, 2011 Injunctive Order; however, the evidence regarding payments received by Defendant only covers the period through October 5, 2011.

$5,449.50 is attributable to the Supreme Court appeal. From August 17, 2010 through September 7, 2011, the Town's attorneys expended 73.30 hours of legal work on this enforcement matter, valued at $11,414.50, for which the attorneys did not charge the Town. From September 8, 2011 through October 11, 2011, the Town incurred $1,146.75 in attorney's fees. Therefore, the value of attorney time and costs expended on behalf of the Town in this matter, exclusive of the Supreme Court appeal, totals $24,829.43, of which $13,414.93 was billed to the Town.

Penalty Analysis

The violation at issue in this case is that Defendant charged for and supplied rooms (sleeping accommodations) to others without obtaining a permit for using his owner-occupied residence as a "rooming and boarding house." As Defendant did not apply for a zoning permit (or its prerequisite site plan approval) for a "rooming and boarding house," the Court does not have before it any information on whether the property could be approved for that use. Defendant's violation has been of a relatively long duration, especially as Defendant was informed by the Notice of Violation as early as June of 2008, and repeatedly thereafter, that the rooming and boarding use of the House required a permit.

In a zoning enforcement case, the Court assesses a daily penalty for the period during which the defendant has the benefit of the zoning violation. See 24 V.S.A. § 4451(a) (authorizing the imposition of up to $100 per violation of a zoning bylaw, and establishing that each day that such a violation continues is a separate offense); Town of Sherburne v. Carpenter, 155 Vt. 126, 133 (1990) ("As long as defendant has the benefit of the zoning ordinance violation, the statute requires that he pay a daily fine.").

The Court calculates a penalty "to remove the economic benefit and the avoided costs achieved by the Defendant from the violation, as well as to

7

compensate the enforcement entity generally for the legitimate costs of bringing the enforcement action." Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.) (citing City of St. Albans v. Hayford, 2008 VT 36, ¶¶ 15–18, 183 Vt. 596). The Court may also consider the factors enumerated in the state environmental enforcement statute. See 10 V.S.A. § 8010(b), (c)(2); In re Jewell, 169 Vt. 604, 606–07 (1999) (stating that the "court has discretion . . . not only to balance [a defendant's] continuing violation against its compliance costs but also to consider such factors as those specified in [10 V.S.A. § 8010(b) and (c)(2)]"). These factors include deterrence of that defendant from committing further violations, whether a defendant had reason to know that the violation existed, and the duration of the violation. 10 V.S.A. § 8010(b)(3), (6), (8).

In the present case, Defendant had the benefit of the zoning violation from early 2007 through late 2011, of which 1118 days occurred after June 12, 2008, the seven-day cure period provided by statute. The Notice of Violation informed Defendant that he could cure the violation by applying for and obtaining a zoning permit for the rooming and boarding use of the property or, in the alternative, by reverting to using the House as a single-family dwelling. Defendant took neither action.

The economic benefit Defendant obtained from the violation was the $63,142 he received in payments for the sleeping accommodations he supplied at the 1166 Main Street house during the 1118-day period of violation.[8]

---

[8] Defendant argues that the economic benefit he obtained from the violation should be measured by the avoided cost of compliance, that is, of making the site plan and zoning application, citing Agency of Natural Res. v. Deso, 2003 VT 36, 175 Vt. 513. However, the present case is unlike Deso, which was an environmental enforcement action in which the use as a gasoline station was legal, but the volume of gasoline sold had triggered the need for the new vapor recovery equipment to be installed. Id. ¶¶ 2–4, 24. Rather, the present case is a zoning enforcement action in which the

It is not appropriate to reduce the economic benefit obtained by Defendant from the violation by any of the amounts shown as rental income expenses on his tax returns. Not only would Defendant have had to pay the taxes, mortgage, utilities, repairs, supplies, cleaning, maintenance, and insurance on the House as his owner-occupied residence if he had not rented out rooms, but these expenses support the very use—a rooming and boarding house—that is illegal without a permit.

In addition to "remov[ing] the economic benefit" obtained by Defendant due to the violation, the penalty amount should also generally compensate the Town for the costs of bringing the enforcement action. Noordsij, No. 142-6-06 Vtec, slip op. at 7. In the present case, an appropriate penalty amount must also be sufficient to deter Defendant from continuing to violate the zoning ordinance, as Defendant continued to charge for providing sleeping accommodations for years after the issuance of the June 5, 2008 Notice of Violation. The length of time the violation existed was within Defendant's control. At any time he either could have applied for approval of the rooming and boarding house use, or could have restored the single-family use of the House.[9]

use itself is illegal unless a permit is obtained, and there was no evidence that the property could qualify for site plan approval and therefore for a zoning permit. As such, it is similar to City of St. Albans v. Hayford, in which the Vermont Supreme Court upheld this Court's removal of economic benefit from a rental use operated without the required permit. 2008 VT 36, ¶¶ 15–18, 183 Vt. 596.

[9] The Court notes that a group of unrelated persons can rent a single-family house together without triggering the rooming-and-boarding-house issue if they live "as a household unit." Defendant did not show that he and those renting the rooms were living together as a household unit or that they had entered into a single lease agreement for the house as a whole. To the contrary, the little evidence produced on this issue suggested that the occupants did not share meals, household tasks, or common living spaces, and that Defendant treated all the occupants as separate renters of separate rooms for tax and accounting purposes, and received separate

In the present case, Defendant has continued to obtain a substantial economic benefit from renting out rooms in his house during the period of violation. Because the total economic benefit Defendant has derived from the violation is so large, assessing a penalty from Defendant for this amount—$63,142—will be sufficient to remove the economic benefit as well as to compensate the Town for the expenses it incurred in conducting the enforcement litigation.[10] In addition, this amount recognizes the length of the knowing violation in this case and will be sufficient to deter Defendant from persisting in the violation. This amount, allocated over the period of the violation, equals a penalty of $56.48 per day, well within the available statutory penalty of $100 per day. See 24 V.S.A. § 4451(a).

The Town requests a penalty of $93,420, adding its litigation expenses, including the amount not actually billed to the Town and the amount attributable to the Supreme Court appeal, to the removed economic benefit. Although this amount would still be within the statutory $100 per day, it is unnecessary to add these litigation expenses in order to adequately compensate the Town, as the entire penalty is payable to the Town.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that in Docket No. 274-11-08 Vtec, the Court imposes a penalty of $63,142, payable to the Town of Fairfax under 24 V.S.A. § 4451(a), calculated as $56.48 per day for a violation period of 1118 days. Defendant Leon Beliveau shall immediately cease the use of the property at 1166 Main Street in the Town of Fairfax, Vermont, as a

---

payments under separate oral lease agreements, even from those occupants who are related to him.

[10] The penalty assessed is sufficient to compensate the Town regardless of whether the Towns litigation expenses are measured as the $13,414.93 as billed to the Town, or as the $24,829.43 including the attorney's fees not charged.

rooming and boarding house, as that term is defined in the Fairfax Zoning Bylaws, and shall return the use of the property to that of a single-family dwelling, as that term is defined in the Fairfax Zoning Bylaws, until and unless he obtains a zoning permit for the change in use from that of a single-family dwelling.

Done at Berlin, Vermont, this 30th day of March, 2012.

_____
Merideth Wright
Environmental Judge