2008 VT 36

## CITY OF ST. ALBANS v. Alan and Beverly HAYFORD, Gregory Benoit and Deborah Kane

[949 A.2d 1058]

No. 07-082

*Wright*, J.

¶ 1. March 12, 2008. Former and current owners of the subject property appeal the Environmental Court's order imposing fines on them and granting the City of St. Albans injunctive relief in response to the City's action seeking enforcement of its zoning ordinance. The owners contend that (1) the City's action is barred by the applicable statute of limitations; (2) the court abused its discretion by granting injunctive relief for a violation that was insubstantial and did not involve conscious wrongdoing; and (3) the court abused its discretion by imposing punitive and excessive fines. We affirm.

¶ 2. The City filed the instant enforcement action in July 2004 against the former owners of the subject property, Alan and Beverly Hayford, as well as the present owners of the property, Gregory Benoit and Deborah Kane, who purchased the property from the Hayfords in June 2003. The subject property consists of two buildings on approximately 21,000 square feet located in a high-density residential zoning district in the City of St. Albans. The Hayfords purchased the property in 1976, the year before the City adopted its first zoning ordinance. When the Hayfords purchased the property, the main building contained four apartments, and the rear building housed a garage and print shop. That same year, the Hayfords obtained a building permit to convert the rear building into a nursery school.

¶ 3. In 1977, the City adopted a zoning ordinance that rendered the property nonconforming as to side and rear setbacks and as to the presence of more than one principal building on a single lot. The ordinance, however, allowed nonconforming buildings or uses to continue indefinitely, as long as the degree of noncompliance did not increase. The ordinance further required zoning board approval to change a nonconforming use into another use and a permit from the zoning administrator for any permitted uses. The zoning regulations also required site-plan approval from the planning commission for any uses other than single-family or two-family residences.

¶ 4. In 1986, the Hayfords added a fifth apartment to the main building. A few months later, in early 1987, they moved the nursery school to a different location and converted the rear building into an additional residential unit. They took these steps without obtaining a zoning permit or site-plan approval, in violation of the zoning ordinance. Apart from the Hayfords' failure to obtain a permit and site-plan approval, the conversion of the rear building to an additional residential unit did not render the property any more nonconforming than it had been. This was so because maintaining six residential units on the property did not violate the dimensional and density requirements of the then-current zoning regulations, except for the grandfathered nonconforming setback of the rear building. In 1993, the City issued the Hayfords a zoning permit to repair one of the apartments in the main building that had been damaged by a fire. A later court order relied on this

permit to overturn the City's notice of violation with respect to the existence of a fifth apartment in the main building.

¶ 5. In 1998, the City adopted new zoning regulations that made multi-family dwellings conditional uses in the subject property's zoning district and that otherwise made the subject property nonconforming in several respects. For the most part, the new dimensional and use nonconformities were grandfathered and thus could continue under the new regulations. Also in 1998, at about the same time that the City adopted the new regulations, the Hayfords applied for a certificate of occupancy, which the zoning administrator denied. Instead of appealing the zoning administrator's decision, the Hayfords applied to the zoning board of adjustment for variances that would allow them to maintain six rather than four residential dwelling units on the property. The board denied the application. The Hayfords did not appeal the board's decision, which became final.

¶ 6. In 1999, the City issued a notice of violation and filed an enforcement action against the Hayfords, alleging that it had approved only four of the six residential units on the their property. That enforcement action was eventually dismissed because of the City's failure to provide a valid notice of violation. The zoning administrator issued a new notice of violation in 2001 based on the same allegation. The Hayfords then applied for a variance to use the rear building as a residential unit. In a 2003 decision, the Environmental Court denied the application based on its 1998 denial of the same request for a variance, which had not been appealed. The court, however, overturned the notice of violation as to the fifth apartment in the main building, reasoning that the City's previous grant of a permit to allow the Hayfords to repair one of the apartments following the 1993 fire effectively permitted the fifth apartment. No party appealed this decision.

¶ 7. In June 2003, Benoit and Kane purchased the subject property from the Hayfords. As had the Hayfords, Benoit and Kane continued to rent out the sixth residence in the rear building despite the notice of violation. At one point, they applied for an after-the-fact conversion of the rear building from a nursery school to a residential dwelling unit. The development review board denied their application. Meanwhile, the City filed the instant enforcement action, seeking injunctive relief and monetary penalties.

¶ 8. Among other things, the property owners (the Hayfords and Benoit and Kane) argued that the enforcement action should be dismissed because it had not been filed within the applicable fifteen-year statute of limitations. See 24 V.S.A. § 4454(a) (requiring municipalities to bring enforcement proceedings related to a failure to obtain or comply with a land-use permit within fifteen years from the date the alleged violation first occurred). They contended that the alleged violation was the Hayfords' failure to obtain a zoning permit and site-plan approval in 1987, which occurred more than fifteen years before the enforcement action.

¶ 9. The Environmental Court concluded that although the Hayfords' failure to obtain a permit and site-plan approval in 1987 occurred more than fifteen years before the instant enforcement action, a new and independent violation occurred in 1998 when the City adopted its new zoning regulations.[*] In addition to

_____

[*] The court also ruled, alternatively, that even without a fresh violation in 1998, the older violation was a continuing-use violation that could be noticed at any time, and further, that the fifteen-year statute of limitations did not apply to actions brought under 24 V.S.A. § 4470(b) to enforce decisions of the development review board, the zoning board of adjustment, or the planning commission. Because we agree with the trial court's ruling as to

enjoining the property owners from using the rear building as a residential unit, the court imposed fines representing a combination of the City's enforcement costs and a portion of the property owners' financial benefit obtained through the violation. On appeal, the property owners argue that the Environmental Court erred by not barring the enforcement action based on the fifteen-year statute of limitations, by granting injunctive relief for a violation that was neither significant nor deliberate, and by imposing fines that are punitive in nature and unjustified under the circumstances.

¶ 10. We first address the property owners' claim that the fifteen-year statute of limitations barred the City's enforcement action. Section 4454(a) of Title 24 allows enforcement actions under specified statutory sections "against the alleged offender if the action, injunction, or other enforcement proceeding is instituted within 15 years from the date the alleged violation first occurred and not thereafter." According to the property owners, the only violation that is actionable is their failure in 1987 to obtain a permit and site-plan approval for converting the nursery school into a residential unit. They contend that the City's adoption of a new zoning ordinance in 1998 could not trigger another violation based on their failure to obtain a permit and site-plan approval in 1987 because the sixth residential unit was a nonconforming use and they did nothing in 1998 to make the use more nonconforming. In other words, the property owners argue that the sixth residential unit was not a violation, but a grandfathered nonconforming use following the adoption of the 1998 zoning regulations.

¶ 11. We disagree. A nonconforming use is a "use of land that does not conform to the present bylaws but did conform to all

applicable laws, ordinances, and regulations prior to the enactment of the present bylaws." 24 V.S.A. § 4303(15). Because the Hayfords failed to obtain a required permit and site-plan approval for their 1987 conversion of the nursery school to an additional residential unit, that use did not conform to all applicable laws at the time it commenced. Hence, it was not a grandfathered nonconforming use immune from a later notice of violation after the 1998 regulations made it nonconforming in several additional respects. In short, when the City adopted the new zoning ordinance in 1998, use of the rear building as a sixth residential unit was out of compliance with that ordinance; because its use was never permitted as required by law at the time it commenced, it was not a grandfathered nonconforming use immunized from a new notice of violation based on the 1998 ordinance. Accordingly, the Environmental Court did not err in declining to apply the statute of limitations contained in § 4454(a).

¶ 12. Next, the property owners argue that the Environmental Court abused its discretion by granting the City injunctive relief for a violation they characterize as minimal and not intentional. The property owners rely on *Town of Sherburne v. Carpenter*, 155 Vt. 126, 131, 582 A.2d 145, 148-49 (1990), where we held that a court has limited discretion to refuse to issue an injunction requiring the removal of a structure violating a municipal zoning ordinance. In that decision, we stated that "there comes a point where the violation is so insubstantial that it would be unjust and inequitable to require the removal of an offending structure through a mandatory injunction." *Id.* at 131, 582 A.2d at 149. We also held that a mandatory injunction "may be an excessive remedy where the nonconforming use was constructed without knowledge that it violated the zoning ordinance." *Id.* at 132, 582 A.2d at 149.

the 1998 violation, we need not address these rationales.

¶ 13. Our decision in *Carpenter* does not help the property owners here. This case does not involve the issue of when a court has the discretion to withhold a mandatory injunction requiring the removal of a structure that violates a zoning ordinance, but we will assume without deciding that the holding extends to all cases in which injunctive relief is granted based on the violation of a zoning ordinance. Nevertheless, the failure to obtain a land-use permit and site-plan approval cannot generally be considered so insubstantial that it would be inequitable to foreclose the unpermitted use. See *id.* at 131, 582 A.2d at 149. The property owners contend that converting the rear building from a daycare to an additional residential unit would have actually decreased use of the property and certainly would have been permitted, as suggested by the zoning administrator's comments at the time. Regarding the Hayfords' contact with the zoning administrator, the Environmental Court ruled in a previous unappealed decision that the City was not estopped by those comments from noticing a violation based on the 1987 conversion of the rear building from a nursery school to an additional residential unit. Moreover, because the property owners failed to seek a permit or site-plan approval for the conversion, their claims regarding the likelihood of obtaining a permit amount to nothing more than speculation.

¶ 14. Nor are we persuaded by the property owners' contention that an injunction should not issue because they did not engage in conscious wrongdoing. See *id.* at 132, 582 A.2d at 149. The property owners did not obtain a permit or site-plan approval for the conversion of the rear building, even though they had previously obtained land-use permits for the property. Later, when the City made the property owners aware of the violation, they persisted in renting out the apartment, notwithstanding the noticed viola-tion. The fact that the property owners challenged the noticed violation did not foreclose the Environmental Court from issuing a mandatory injunction.

¶ 15. Finally, the property owners argue that the fines imposed by the Environmental Court were punitive in nature and excessive under the circumstances. In its decision, the Environmental Court concluded that an appropriate penalty would cover the municipal costs of enforcement, which the parties stipulated to be $4,500, and at least a significant portion of the financial benefit gained through rental of the rear building residential unit after the property owners were notified of the violation. The court noted that the parties had stipulated that the property owners collected $14,300 in rent from that residential unit in the thirty-four months preceding the trial — from July 1, 2003 until April 30, 2006 — which came to an average of $13.83 per day. The court decided not to impose the entire $13.83 per day, however, in recognition of errors the City made in administering its zoning regulations over the years and the reasonable arguments raised by the property owners during the ensuing litigation. In the end, the court imposed a penalty of $7.50 per day for the period between July 2001 and April 2006, which amounted to a total fine of $13,110 ($5,347.50 owed by the Hayfords and $7,762.50 owed by Benoit and Kane).

¶ 16. On appeal, the property owners argue that the Environmental Court failed to consider that they had incurred significant costs in attempting to comply with the notice of violation and would lose considerable income because the building had become functionally useless. They also contend that the court's fines violated *Town of Hinesburg v. Dunkling*, 167 Vt. 514, 526, 711 A.2d 1163, 1170 (1998) (holding that the Legislature intended the enforcement statute to impose civil rather than punitive penalties for violations of zoning bylaws) in that the fines were

punitive in nature and the property owners were not given an opportunity to cure the violation.

¶ 17. None of these arguments are persuasive. The applicable statute authorizes the Environmental Court to impose up to $100 per violation of a zoning bylaw, and each day that a violation continues after sufficient notice is a separate offense. 24 V.S.A. § 4451(a). The court has the discretion to determine the amount of a fine, and, in doing so, to balance any continuing violation against the cost of compliance and to consider other relevant factors, including those specified in the Uniform Environmental Enforcement Act. *In re Jewell*, 169 Vt. 604, 606-07, 737 A.2d 897, 900 (1999) (mem.). Here, the Environmental Court took into consideration the property owners' defenses and expenses and limited the penalty accordingly. Further, the court was certainly aware that the property owners would not be able to rent out the residential unit in the rear building unless and until they obtained the City's approval; indeed, the court enjoined the property owners from doing so based on the applicable law.

¶ 18. Moreover, the penalty that the court imposed was well below the amount allowed by statute, and the property owners had ample opportunity to cure the violation following notice from the City. See *Dunkling*, 167 Vt. at 526, 711 A.2d at 1170 (noting that civil penalties are assessed to coerce the defendant to take action that is ordered by the court or that would benefit the plaintiff). We did not suggest in *Dunkling* that the Environmental Court is precluded from imposing a fine that exceeded a town's enforcement costs; rather, we held that the court in that case acted within its broad discretion by basing its fine on the attorney's fees and other costs incurred by the town in bringing the enforcement action. See *id.* at 529, 711 A.2d at 1171 (upholding penalty that was within the limits imposed by the enforcement statute).

*Affirmed.*