# STATE OF VERMONT

SUPERIOR COURT                                          ENVIRONMENTAL DIVISION
                                                       Docket No. 88-7-19 Vtec

| Purvis North Willard Street |
|---|

## ENTRY REGARDING MOTION

Count 1, Municipal DRB Other (88-7-19 Vtec)

Title:          Motion for Summary Judgment (Motion 2)

Filer:          Luke Purvis

Attorney:       Hans G. Huessy

Filed Date:     February 17, 2020

Response in Opposition filed on 03/31/2020 by Attorney Kimberlee J. Sturtevant for
        the City of Burlington

Reply filed on 04/06/2020 by Attorney Hans G. Huessy for Appellant Luke Purvis

**The motion is DENIED.**

Appellant Luke Purvis ("Mr. Purvis") appeals a June 28, 2019 decision of the City of Burlington Development Review Board ("DRB") determining that a three-unit dwelling and associated parking areas on his property could not be recognized as either lawful preexisting nonconforming uses or unenforceable zoning violations because the uses at issue had been discontinued. Presently before the Court is Mr. Purvis's Motion for Summary Judgment, which contends that the City of Burlington's Comprehensive Development Ordinance ("CDO") §§ 5.3.4 and 5.3.2 should be interpreted to require a showing of intent to abandon or discontinue on the part of the property owner. Mr. Purvis is represented by Hans G. Huessy, Esq. The City of Burlington ("City") is participating as an interested person in this matter and is represented by Kimberlee J. Sturtevant, Esq.

### Factual Background

As Mr. Purvis seeks summary judgment on a purely legal question, we include the following background solely to provide context for the pending motion.

Mr. Purvis owns property located at 164 North Willard Street in Burlington, Vermont. He asked the City to recognize an unpermitted triplex and two unpermitted parking areas on his property as lawful preexisting nonconformities or, in the alternative, as zoning violations which

could not be enforced due to the 15-year statute of limitations set forth in 24 V.S.A. § 4454(a).[1] The City denied the request, and Mr. Purvis appealed to the DRB. On appeal, the DRB determined that the use of the property could not be recognized as a preexisting nonconforming triplex because the use of one of the three units was discontinued for a period of over one year. The DRB also concluded that the use was not an unenforceable zoning violation because uses are not subject to the 15-year statute of limitations. Finally, the DRB concluded that the parking areas could not be recognized as preexisting nonconforming structures or unenforceable zoning violations because the use of the areas for parking had been discontinued within the last 15 years.

Mr. Purvis now appeals the DRB's decision. His motion for summary judgment argues that "discontinuance alone is not enough to extinguish his property rights. Rather, the discontinuance must be coupled with some evidence of [Mr. Purvis's] intent to discontinue the use." Appellant's Motion for Summary Judgment at 1, filed Feb. 17, 2020. We address Mr. Purvis's legal arguments in the Discussion section below.

## Discussion

The Court will grant summary judgment to a moving party only if that party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We will "accept as true the [factual] allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and we will give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

Mr. Purvis seeks summary judgment on an issue of statutory and ordinance interpretation: whether relevant provisions of the CDO and the corresponding enabling statute should be read to require evidence of intent to abandon or discontinue before an owner loses nonconforming use status.

To clarify the issue before the Court, we must discuss the distinction between "abandonment" and "discontinuance" of nonconforming uses and the relevant precedent from the Vermont Supreme Court. Traditionally, "the common law rule of abandonment holds that a nonconforming use can be abandoned only by acts or omissions indicating an intent to abandon."

---

[1] A nonconforming use or structure is a use or structure that was legal when it began, but that does not conform to the land use regulations established since its inception. *See* 24 V.S.A. §§ 4303(14)–(15) (defining nonconforming structures and uses). Nonconformities are not zoning violations. They are considered legal, which is why we often refer to them as "lawful preexisting nonconforming" uses or structures. *See, e.g.*, In re Bay Harbor Marina, Inc., No. 118-8-13 Vtec, slip op. at 5 (Vt. Envtl. Div. Apr. 4, 2014) (Durkin, J.). Conversely, a lot or structure that was illegal when it began, but which is unenforceable because it has been ongoing for more than fifteen years, *see* 24 V.S.A. § 4454, is not a nonconforming use: it is an unenforceable zoning violation. *See* City of St. Albans v. Hayford, 2008 VT 36, ¶ 10–11, 183 Vt. 596. The CDO discusses unenforceable zoning violations with reference to the Bianchi v. Lorenz decision of the Vermont Supreme Court. *See* CDO § 5.3.2 ("Bianchi controlled uses, structures, and lots."); *see also* Bianchi v. Lorenz, 166 Vt. 555 (1997). We have previously noted that Bianchi is not good law, and "has no obvious relevance to ordinary zoning enforcement." *See* Purvis Nonconforming Use, No. 45-5-15 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2016) (Durkin, J.). Rather, we have held that CDO § 5.3.2 "applies to all [zoning] violations claiming the protection of the statute of limitations" found in 24 V.S.A. § 4424 and does not apply to nonconforming uses. *See* id. at 7–9.

*See* 2 Patricia E. Salkin, American Law of Zoning, § 12:22 (5th ed. 2020). Some courts apply the common law rule even where an ordinance provides that nonconforming uses are terminated after a specified period of discontinuance, or cessation. *See* Salkin, *supra*, § 12:22 (5th ed.). However, other courts have held that a "discontinuance" ordinance "requires only the cessation of use for the stated period and does not require a showing of an accompanying intention to abandon." 83 Am. Jur. 2d Zoning and Planning § 581; *see also* Salkin, *supra*, § 12:22 (5th ed.); In re Gregoire, No. 2002-080, slip op. at 2, 2002 WL 34422448 (Vt. Sept. 1, 2002) (unpublished mem.) ("Unlike discontinuance, abandonment requires a showing of intent."); Hartley v. City of Colorado Springs, 764 P.2d 1216, 1222–23 (Colo. 1988) (Noting that the historic "[u]se of the term 'discontinuance' represented a conscious decision on the part of legislators to avoid the problems of proof inherent in determining intent to abandon a nonconforming use"). In short, many courts treat the terms as synonymous, while others do not. *See* Salkin, *supra*, § 12:22 (5th ed.); *see also* Hartley, 764 P.2d at 1222–23.

In Badger v. Town of Ferrisburgh, the Vermont Supreme Court was confronted with the question of whether a local discontinuance ordinance should be construed to require a showing of intent to abandon a nonconforming use. *See* Badger, 168 Vt. 37, 39 (1998). The Badger Court acknowledged that "many courts . . . require [a showing of] an intent to abandon," and "[w]here the applicable statute or ordinance uses the term discontinuance, courts reach this result by equating the term with abandonment." Id. at 40 (citations omitted). Yet the Court also noted: "some courts have held that 'nonuse of the property for the time specified in a discontinuance ordinance terminates the nonconforming use regardless of intent to abandon.'" Id. (quoting Hartley, 764 P.2d at 1223).

Examining the state enabling statute in place at the time, the Badger Court found that the Legislature had clearly distinguished between abandonment and discontinuance by providing that municipalities "may prohibit resumption of a nonconforming use if such use is abandoned for any period of time," or "[a]lternatively . . . if [the use] is discontinued for six calendar months." *See* Badger, 168 Vt. at 41 (quotations omitted); *see also* 24 V.S.A. § 4408(b), repealed by 2003, Adj. Sess., No. 115, § 119(c) and replaced by 24 V.S.A. § 4412(7)(A)(i).

Holding that "discontinuance does not mean abandonment," the 1998 Badger Court explained that "[i]n context, the word discontinuance can only mean cessation, without the kind of intent associated with abandonment." Badger, 168 Vt. at 41. Because the local ordinance at issue established "a policy based on discontinuance, rather than abandonment," the Court declined to import an intent requirement. *See* id. The Court's reasoning was bolstered by language in the statute and the ordinance stating that "intent to resume a nonconforming use does not confer the right to resume." *See* id. (quotations omitted).

In the years since Badger was decided, the enabling statute has been repealed and replaced. *See* 24 V.S.A. § 4408(b), *repealed by* 2003, No. 115 (Adj. Sess.), § 119(c); 24 V.S.A. § 4412(7)(A)(i). The current statute authorizes a municipality to "[s]pecify a time period that shall constitute abandonment or discontinuance of [a] nonconforming use," but does not prescribe different time periods for discontinuance or abandonment, and it omits any reference to the import of an intent to resume a nonconforming use. 24 V.S.A. § 4412(7)(A)(i). In light of these changes, Mr. Purvis argues that the reasoning in Badger is moot and this Court should "adopt the

majority view and require a showing of intent to discontinue a use before extinguishing important property rights." *See* Appellant's Motion for Summary Judgment at 6. He contends that both the enabling statute and the CDO should be read to require a showing of intent.

The current enabling statute provides that:

> To achieve the purposes of this chapter . . . municipalities may regulate and prohibit expansion and undue perpetuation of nonconformities. Specifically, a municipality, in its bylaws, may:

> Specify a time period that shall constitute abandonment or discontinuance of that nonconforming use, provided the time period is not less than six months.

24 V.S.A. § 4412(7)(A)(i). The CDO provision governing discontinuance of nonconforming uses states:

> A nonconforming use shall not be re-established if such use has been discontinued for any reason for a period of one (1) year or longer. . . .

> An extension to this time limit may be granted by the DRB after a public hearing and on the basis of documented evidence of a continuous good faith effort to reestablish the nonconforming use. . . . Any request for such an extension shall be submitted in writing prior to the expiration of the one (1) . . . year time limit as specified above.

CDO § 5.3.4(b). The record before us does not reveal whether this CDO provision was originally drafted before or after the Legislature enacted the current enabling statute in 2003.

We interpret zoning ordinances and statutes under the familiar rules of construction. *See* In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). The "paramount goal in construing a zoning ordinance, like any statute, is to give effect to the legislative intent. In re Howard Ctr. Renovation Permit, 2014 VT 60, ¶ 9, 196 Vt. 542 (2014) (quotation omitted). Words should be given their plain meaning, "giving effect to the whole and every part of the ordinance." *See* id.; Badger v. Town of Ferrisburgh, 168 Vt. 37, 40 (1998). Our construction should implement the legislative purpose. Badger, 168 Vt. at 40.

The primary purpose of zoning is "to bring about the orderly physical development of the community by confining particular uses to defined areas." Vermont Brick & Block, Inc. v. Vill. of Essex Junction, 135 Vt. 481, 483 (1977) (citation omitted). As nonconforming uses are inconsistent with that purpose, "[a] goal of zoning is to gradually eliminate these uses." Id. There is a strong public interest in regulating and phasing out nonconforming uses, and "zoning provisions allowing nonconforming uses should be strictly construed." Badger, 168 Vt. at 40 (first citing Hinsdale v. Vill. of Essex Junction, 153 Vt. 618 (1990), then citing Hartley v. City of Colorado Springs, 764 P.2d 1216, 1224 (Colo. 1988)).

Considering the changes in the current enabling statue, we agree that the interpretation of the older statute in Badger is no longer directly applicable. However, we must reiterate that the issue before us, as in the Badger decision, is "fundamentally one of statutory or ordinance construction." Badger, 168 Vt. at 40 (citation omitted).

For two reasons, we assign little weight to the assertion that the majority of courts require intent as an element of discontinuance. First, we cannot say there is a clear majority view on this issue. The sources cited by Mr. Purvis reveal a wide variety of approaches and include commentary which is inconsistent with his position. *See, e.g.*, 2 Patricia E. Salkin, American Law of Zoning, § 12:22 (5th ed. 2020) ("Unlike common law abandonment, which requires proof of intent, most courts now hold that intent is irrelevant under a duly enacted discontinuance ordinance and nonuse for the specified period will result in termination of the nonconforming use."). Second, whatever the majority view may be, the law in Vermont has distinguished between discontinuance and abandonment since at least the time of the Badger decision. Thus, the first question is whether the enactment of 24 V.S.A. § 4412(7)(A)(i) eliminated that distinction and limited municipalities' ability to choose a pure durational standard without an intent requirement, or "a policy based on discontinuance, rather than abandonment." Badger, 168 Vt. at 41.

We cannot say that the current enabling statute was intended to eliminate the distinction. While the statute no longer prescribes different time periods for abandonment and discontinuance, the plain language still provides a choice for municipalities between the two terms. *See* 24 V.S.A § 4412(7)(A)(i) (stating that a municipality may "[s]pecify a time period that shall constitute abandonment or discontinuance of th[e] nonconforming use."). And, though the statute is silent on the issue of intent, we must presume that the Legislature intended the words "abandonment" and "discontinuance" to have independent significance. *See* State v. Yorkey, 163 Vt. 355, 358 (1995) (citation omitted) ("[E]very part of a statute must be considered and, if possible, effect given to every word, clause and sentence . . . ."); *see also* T.C. v. L.D., 2020 VT 19, ¶ 4 (2020) (quoting Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 153 (1979)) ("We presume that this language was 'drafted advisedly, and that the plain[,] ordinary meaning of the language used was intended.'"). Because the statute retains two alternatives, we conclude that municipalities may implement policies of abandonment and discontinuance as those terms were defined in Badger.[2] *See* 24 V.S.A. §4412(7)(A)(i).

The second question is whether the CDO should be construed to require a showing of an intent to abandon nonconforming uses. Since the City has chosen "a policy based on discontinuance," we conclude that the answer is no. *See* Badger, 168 Vt. at 41. The ordinance provision at issue, CDO § 5.3.4(b), is titled "Discontinuance" and states that "a nonconforming use shall not be re-established if such use has been discontinued for any reason for a period of one (1) year or longer." The provision does not expressly require a showing of intent to abandon. In fact, since the drafters chose the term discontinuance and did not reference intent, we conclude that the choice was made not to require a proof of intent to abandon. *See* CDO § 5.3.4(b). Rather, a plain reading of the operative phrase, stating that nonconforming uses "shall not be re-established if . . . discontinued for any reason," suggests that an owner's intent is irrelevant once the time limit expires. *See* id.

---

[2] We also note that the Badger Court stated: "We need not decide how we would rule if the governing rule or statute used only a durational discontinuance standard." Badger, 168 Vt. at 40. That question will remain open, as the current enabling statute contemplates both "abandonment" and "discontinuance." 24 V.S.A. § 4412(7)(A)(i).

The ordinance does allow the DRB to consider an owner's "good faith effort to reestablish the nonconforming use," but only upon a timely request to extend the one-year time limit. Id. This reinforces our conclusion that nonconforming uses are terminated after a specified period of nonuse, and that intent is not a factor once that time period expires. *See* id.

Mr. Purvis challenges the meaning of CDO § 5.3.2 as well, arguing that the intent to abandon should be required before an owner loses the right to continue with "Bianchi-type" uses.[3] *See* Appellants Motion for Summary Judgment at 2, 5. As we have said, the reference to so-called "Bianchi" uses in CDO § 5.3.2 relates to unenforceable zoning violations, not nonconforming uses. Purvis Nonconforming Use, No. 45-5-15 Vtec at 7–9 (Jan. 27, 2016). Thus, statutes and case law regarding nonconformities are not directly applicable. *See* 24 V.S.A § 4412(7) (governing nonconformities). Nonetheless, we must consider whether CDO § 5.3.2 requires an intent to abandon an unenforceable zoning violation. The ordinance provides:

> Although not subject to [an] enforcement action, . . . uses, structures, and lots which are deemed to be controlled by the Bianchi decision, and the subsequent enactment of 24 VSA Sec. 4454, shall be considered violations that are not considered legal to any extent and shall in no event be granted the consideration or allowances of nonconforming structures, uses, and lots. Thus, no change, alteration, enlargement, and reestablishment after discontinuance for more than sixty (60) days . . . shall be permitted, except to a conforming use, structure, or lot.

CDO § 5.3.2.

This provision is consistent with CDO § 5.3.4, governing nonconforming uses, in the sense that it employs the term "discontinuance" and imposes a clear durational regulation. *See* CDO § 5.3.4(b). Though § 5.3.2 is silent as to intent, the plain language shows that unenforceable violations are regulated more strictly than nonconforming uses. *See* CDO § 5.3.2 (these violations "shall in no event be granted the consideration" of nonconformities"). The provision also imposes a shorter time limit for discontinuance: sixty days as compared to one year. *See* CDO §§ 5.3.2, 5.3.4. The City asserts that a more restrictive policy is appropriate because, unlike nonconforming uses, these violations were never legal. We agree. Mr. Purvis has not provided any authority requiring a showing of an intent to abandon unenforceable zoning violations, and we find no such requirement in the language of the CDO. *See* CDO § 5.3.2.

Finally, Mr. Purvis raises equitable concerns regarding "the unintentional loss of important property rights." Appellant's Motion for Summary Judgment at 5. We recognize the important property interests at stake, yet we are mindful of the established policy to phase out nonconforming uses. *See* Badger, 168 Vt. at 40 (noting that "the public interest in the regulation and gradual elimination of nonconforming uses is strong"). "To implement the phase-out policy, the Legislature and the Town can decide to establish a bright line that applies irrespective of the intent o[r] the owner's ability to use the property." Id. at 43. Furthermore, our interpretation of 24 V.S.A. § 4412(7)(A)(i) and the CDO adheres to the instruction that "zoning provisions allowing nonconforming uses should be strictly construed." Badger, 168 Vt. at 40 (citation omitted).

---

[3] Mr. Purvis uses the terms "discontinuance" and "abandonment" interchangeably, but both the enabling statute and the caselaw establish by our Supreme Court in Badger references the two distinct terms, as noted above.

## Conclusion

For the foregoing reasons, we conclude that neither 24 V.S.A. § 4412(7)(A)(i) nor the CDO require a showing of intent to abandon a nonconforming use or unenforceable zoning violation. Mr. Purvis has not demonstrated that he is entitled to judgment as a matter of law.  Therefore, his Motion for Summary Judgement is **DENIED**. *See* V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2).

**So Ordered.**


Electronically signed on July 23, 2020 at Newfane, Vermont pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

Notifications:
Hans G. Huessy (ERN 1813), Attorney for Appellant Luke Purvis
Kimberlee J. Sturtevant (ERN 4778), Attorney for the City of Burlington
Interested Person Margaret Tamulonis