VERMONT SUPERIOR COURT

Environmental Division

32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

Docket No. 143-7-08 Vtec
Docket No. 148-8-04 Vtec
Docket No. 126-7-04 Vtec



| Benoit Conversion Application |
|---|

## ENTRY REGARDING MOTION

**Title:** Memorandum of Law

**Filer:** Attorneys Michael S. Gawne and Colin K. McNeil (Joint Stipulation)

**Filed Date:** March 19, 2021

Supplemental Memorandum filed on March 19, 2021, by Michael S. Gawne, attorney for
Deborah and Gregory Benoit.

**Motion is DENIED.**

This matter concerns property containing two buildings, a main building with multiple
rental units and a separate building in the rear of the property, located at 53 High Street in St.
Albans, Vermont ("the Property").[1] Property owners Gregory and Deborah Benoit ("Appellants")
seek to modify this Court's February 12, 2007 decision and order ("Hayford I"), which was
affirmed by the Vermont Supreme Court in City of St. Albans v. Hayford.[2] *See* City of St. Albans

---

[1] The property is composed of approximately 20,900 square feet and located in a high-density residential zoning district in the City of St. Albans. City of St. Albans v. Alan Hayford et al., No. 126-7-04 Vtec, slip op. at 2 (Vt. Super. Ct. Feb. 17, 2007) (Wright, J.) [hereinafter Hayford I]; City of St. Albans v. Hayford, 2008 VT 36, ¶ 2, 183 Vt. 596 (2008) [hereinafter "Hayford II"]. The Property was previously owned by Alan Hayford and Beverly Hayford, who purchased the property in mid-1976. Hayford I, No. 126-7-04 Vtec at 3 (Feb. 17, 2007). Appellants here purchased the Property in June 2003. Hayford II, 2008 VT 36, at ¶ 7.

[2] The first iteration of this enforcement case was filed in Franklin Superior Court on June 16, 2003 and entitled Garceau v. Hayford, Docket No. S273-03 Fncv. This case was later transferred to the Environmental Court as City of St. Albans v. Hayford and Benoit and Kane, Docket No. 161-9-03 Vtec and dismissed by stipulation of the parties as redundant to City of St. Albans v. Alan Hayford et al., No. 126-7-04 Vtec, which is the source and focus of this proceeding concerning the Appellants' and City's Proposed Stipulation.

For further background, we also note that while the enforcement case was pending, the zoning history and compliance status of the Property was litigated in other cases, including: In re Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003) and In re Appeal of Benoit and Kane, Docket No. 148-8-04 Vtec (Vt. Envtl. Ct.,

---

*Entry Regarding Motion* *Page **1** of **12***

*In re Benoit Conversion Application, No. 143-7-08 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Apr. 20, 2021) (Durkin, J.).*

v. Hayford & Benoit, No. 126-7-04 Vtec, slip op. at 13 (Vt. Super. Ct. Feb. 17, 2007) (Wright, J.) (granting the City of St. Albans' request for injunctive relief and monetary penalties) ; *see also* City of St. Albans v. Hayford, 2008 VT 36, ¶ 2, 183 Vt. 596 (2008) (affirming the Environmental Division) [hereinafter "Hayford II"]; City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec, slip op. at 5 (Vt. Envtl. Ct. June 1, 2004) (Wright, J.).  Appellants seek to modify the 2007 Order to use the 5th apartment in the main building as a residential dwelling unit and continue to use the rear building as a 6th residential dwelling unit, resulting in a total of 6 dwelling units.  *See* Proposed Stipulation filed on Dec. 23, 2020, at 1.  Presently before the Court are Appellants and the City of St. Albans's ("City") Joint Stipulation.

Appellants are represented by Michael S. Gawne, Esq. The City is represented by Colin K. McNeil, Esq.

## Background

For the purpose of providing context to the pending proposed Joint Stipulation, we first address the relevant procedural history and background of the litigation pertaining to this Property.

In 1977, the City adopted a zoning ordinance, which prescribed side and rear setbacks and regulated the presence of more than one principal building on a single lot.  Hayford II, 2008 VT 36, ¶ 3.  The 1977 City of St. Albans Zoning Ordinance ("1977 Ordinance") further required zoning board approval to change a nonconforming use into another use, a zoning permit from the zoning administrator for any permitted uses, and a site-plan approval from the planning commission for any uses other than single-family or two-family residence.  Id.; Hayford I, No. 126-7-04 Vtec at 3–4 (Feb. 17, 2007); *see also* 1977 City of St. Albans Zoning Ordinance §§ 205, 401. The 1977 Ordinance also "allowed nonconforming buildings or uses to continue indefinitely, as long as the degree of noncompliance did not increase."  Id. at ¶ 3; 1977 Ordinance § 602.2.

Dec. 15, 2005).  After these proceedings were concluded, the enforcement case relevant to this proceeding was addressed by Judge Wright.

The 1977 Ordinance rendered the Property nonconforming due to side and rear setback encroachments and the presence of more than one principal building.[3] Hayford I, No. 126-7-04 Vtec at 4 (Feb. 17, 2007). In 1986, the original owners of the Property, Allan and Beverly Hayford ("the Hayfords"), converted the interior space of the main building from 4 to 5 rental units without first obtaining a zoning permit or site-plan approval, in violation of the then-existing zoning ordinance. In the spring of 1987, the Hayfords (the then owners) also began using the rear building as a 6th rental unit, also without obtaining the necessary zoning permit or site-plan approval. Hayford II, 2008 VT 36, at ¶ 3; *see also* Hayford I, No. 126-7-04 Vtec at 4 (Feb. 17, 2007). The use of the rear building as a 6th residential unit, apart from the failure to obtain necessary permits and approvals, "did not render the property *any more* nonconforming than it had been" since using a 6th residential unit did not violate dimensional or density requirements other than the grandfathered nonconforming setback.[4] Id. (emphasis added).

Thus, the status of the Property, prior to the adoption of the 1998 Zoning Regulations, included: (1) a grandfathered dimensional nonconformity of the rear setback of the rear building; (2) a use of the main building for 5 residential units that did not constitute a use-violation;[5] (3) a use of the rear building as a residential unit that was not a use-violation because multi-family residential use was a permitted use; and (4) a violation for the conversion of the use of the rear building to residential use without the necessary zoning permit. Hayford I, No. 126-7-04 Vtec at

---

[3] The Property met the requirements of the ordinance as to "lot width, minimum lot size, and lot coverage." Hayford I, No. 126-7-04 Vtec at 3 (Feb. 17, 2007). In addition, the four residential units in the main building met the requirement for three thousand square feet of lot area for each unit. Id. The rear building was located approximately 4 feet from the east or rear property line and approximately 2 feet from the south side property line. Id. The Property's side and rear setbacks were smaller than required under the 1977 Ordinance. Id.

[4] The Hayford I decision even notes that the use of the rear building "may have made the property less non-conforming" as the "conversion of the rear building to an accessory structure made the side setback conforming and made the rear setback less non-conforming." Hayford I, No. 126-7-04 Vtec at 4–5 (Feb. 17, 2007) (noting that the conversion of the rear building into a residential unit "did not violate any order of the then-ZBA and did not violate zoning regulations" excepting the failure to obtain a permit and site plan approval).

[5] In 1993, the City issued the Hayfords a zoning permit to repair one of the dwelling units in the main building due to fire damage. Hayford I, No. 126-7-04 Vtec at 5 (Feb. 17, 2007). The zoning permit "recognized that the property was allowed to continue being used with [5] dwelling units in the main building." Id. In 2003, the Environmental Division overturned an NOV because the 1993 zoning permit recognized 5 dwelling units. Id.; Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003) (Wright, J.).

5 (Feb. 17, 2007) (noting that the 6th rear unit did not become a density violation until after 1998 zoning regulations).

In 1998 the City adopted the City of St. Albans Land Development Regulations ("1998 Regulations") that made multi-family dwellings conditional uses in the Property's zoning district, rendering the Property nonconforming "in several respects."[6] Id. at 5. After the 1998 Regulations were adopted, the Property's status now included: (1) grandfathered dimensional nonconformities for the main building's north side setback, the rear building's side setback, and potentially the rear building's rear setback;[7] and (2) grandfathered nonconformities as to lot coverage,[8] the location or number of off-street parking, and as to the associated landscaping requirements. Id. at 5–6. In addition, the Property included the following grandfathered use nonconformities: (1) the Property's use as a multi-family dwelling without conditional use approval, unless additional alterations were proposed; and (2) the use of 5 dwellings in the main building, based upon a 1993 zoning permit obtained to repair one of the apartments after a fire. Id. at 6–7. The 6th rear unit was not considered grandfathered as it had not received a zoning permit or site plan approval and its "use as a dwelling unit also became a violation due to the insufficient area per dwelling unit." Id. at 7.

This same year, the Hayfords applied to the Zoning Administrator ("ZA") for a Certificate of Occupancy, which was denied for failure to comply with the zoning regulations.[9] This action

---

[6] The 1998 Regulations "increased the minimum lot area to five thousand square feet per unit for a multi-family dwelling, increased the minimum side setback for buildings other than single-family dwellings s to fifteen feet, set a minimum side setback of five feet for an accessory structure, and increased the minimum rear setback to five feet for an accessory structure." Hayford I, No. 126-7-04 Vtec at 5–6 (Feb. 17, 2007); 1998 Regulations § 304. In addition, the 1998 Regulations determined that multi-family dwellings became conditional uses in the High Density-Residential zoning district. Id. at 6; 1998 Regulations § 502.

[7] The rear setback, if used as an accessory building, became more non-conforming. Hayford I, No. 126-7-04 Vtec at 6 (Feb. 17, 2007).

[8] The 1998 Regulations increased maximum lot coverage to 50% and added requirements for off-street parking and landscaping. 1998 Regulations §§ 304, 415–416.

[9] The Zoning Administrator denied the Certification on the grounds that the Hayfords failed to gain ZBA approval for: "(1) an expansion of a non-conforming use (due to the two principal buildings); (2) an area variance as the property is undersized for six residential units; and (3) possible variances for site plan requirements of the regulations, such as parking; and also due to the lack of a 'building permit' for the fifth unit in the main house." City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec at 5 (June 1, 2004).

was not timely appealed and therefore became final.  Id. at 7; City of St. Albans v. Alan Hayford et al., No. 161-9-03 Vtec at 3 (June 1, 2004).  The Hayfords then applied to the City of St. Albans Zoning Board of Adjustment ("ZBA") for a variance to convert the Property from 4 dwelling units to 6.  Hayford I, No. 126-7-04 Vtec at 7 (Feb. 17, 2007).  In May of 1998, the ZBA's denied the Hayford's request for variance.[10]  Id. This decision was also unappealed and became final. Hayford II, 2008 VT 36, ¶ 5.

In July of 1998, the ZA issued a Notice of Violation ("NOV") for the use of 6 dwelling units where only 4 had received approval, which the Hayfords timely appealed to the ZBA.  Hayford I, No. 126-7-04 Vtec at 7–8 (Feb. 17, 2007).  Since the ZBA failed to timely act on the appeal, the NOV was vacated on February 11, 1999.  Id. at 7.  The same day, the ZA filed an enforcement action in Superior Court, which the Superior Court later held in favor of the Hayfords because the NOV had been vacated.  See Garceau v. Hayford, Docket No. S98-99 Fc (Franklin Superior Ct., May 29, 2001).

On July 11, 2001, the ZA issued a new NOV for the use of 6 dwelling units, which the Hayfords timely appealed to the City of St. Albans Development Review Board ("DRB").  Hayford II, 2008 VT 36, ¶ 6.  In August 2001, the Hayfords also applied to the DRB for a variance to use the rear building as a dwelling unit and to eliminate one of the 5 dwelling units in the main building.  Id.  In September, the DRB upheld the ZA's new NOV and denied the Hayford's variance request.[11]  Id.  The Hayfords subsequently appealed both decisions to this Court.

On February 26, 2003, the Environmental Court denied the variance, holding that the ZBA's 1998 initial denial was final and binding.  Hayford II, 2008 VT 36, ¶ 6; Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003) (Wright, J).  In the same decision, the Court also upheld the NOV regarding the 6th residential unit in the rear building and overturned the NOV with respect to the 5th unit in the main building, since the City had previously granted a

---

[10]  The ZBA denied this request, noting that the Property "required five variances: regarding the lot area, the sideline setbacks, the rear setback for principal buildings, landscaping around the perimeter of a parking lot, and no parking within the required setbacks."  Id.

[11] The DRB denied the variance request at a September 17, 2001 hearing and later issued a formal decision denying the variance on September 26, 2001.

permit to allow the Hayfords to repair one of the apartments after a fire in 1993. Id. (noting that this permit effectively permitted the 5th apartment). This decision was not appealed and therefore became final.

In violation of the Environmental Court's 2003 Decision, the Hayfords continued to rent the 6th unit in the rear building.[12] Hayford I, No. 126-7-04 Vtec at 8 (Feb. 17, 2007). On June 16, 2003, the ZA filed a new compliant in Superior Court for injunctive relief and penalties regarding the rental use of the 6th unit in the rear building, pursuant to 24 V.S.A. § 4444 and § 4445.[13] Id. In this enforcement proceeding, the Hayfords and Appellants here (the Benoits) argued that the enforcement action was not filed within the fifteen-year statute of limitations period and therefore merited dismissal. Id.; see 24 V.S.A. § 4454(a) ("An action, injunction, or other enforcement proceeding. . . may be instituted [for failure to comply with a land-use permit] within 15 years from the date the alleged violation first occurred and not thereafter . . ..").  The Environmental Court ultimately concluded that "although the Hayfords' failure to obtain a permit and site-plan approval in 1987 occurred more than fifteen years before the instant enforcement action, a *new and independent violation* occurred in 1998 when the City adopted its new zoning regulations." Hayford II, 2008 VT 36, at ¶ 9 (emphasis added); Hayford I, No. 126-7-04 Vtec at 11–12 (Feb. 17, 2007). In this Decision, the Court ordered the Hayfords and Appellants to cease using the rear building as a residential unit and imposed fines. Hayford II, 2008 VT 36, at ¶ 9. Appellants timely appealed to the Vermont Supreme Court, arguing that since the 6th unit was a grandfathered nonconforming use following the adoption of the 1998 zoning regulations and therefore the enforcement action should be barred based upon the fifteen-year statute of limitations. Id.

The Vermont Supreme Court upheld the Environmental Court's Decision, holding that since the Hayfords failed to obtain a permit and site-plan approval for the 1987 conversion of the 6th unit into a dwelling unit the use "did not conform to all applicable laws at the time it

---

[12] The Property was purchased by Appellants on June 30, 2003. The 6th unit in the rear building continued to be used as a rental unit after Appellants purchased the Property.

[13] This appeal was later amended on July 11, 2003 to add Defendants Benoit and Kane, Appellants in this appeal, and was transferred to the Environmental Court in September 2003 where it received Docket No. 161-9-03 Vtec.

commenced" and was therefore not "immune from a later notice of violation after the 1998 regulations made it nonconforming in several additional respects." Id. at ¶ 11. Moreover, the Court clarified that:

> "when the City adopted the new zoning ordinance in 1998, use of the rear building as a sixth residential unit was out of compliance with that ordinance; because its use was never permitted as required by law at the time it commenced, it was not a grandfathered nonconforming use immunized from a [NOV] based on the 1998 ordinance."

Id. (stating that the Environmental Court did not err in declining to address 24 V.S.A. § 4454).

Approximately eleven years later, the Supreme Court revisited this Court's application of 24 V.S.A. § 4454 in In re 204 North Avenue NOV. In 204 North Ave, a property owner converted the subject property from a duplex to a triplex in 1992, began renting units in 1993 and the City assessors inspected the property and listed the building as containing 3 units. In re 204 N. Ave. NOV, 2019 VT 52, ¶ 2, 210 Vt. 572. In July 2017, the City issued its first and only NOV to the property owner, approximately 23 years after the property owner began using the building as a triplex without zoning approval in violation of the City of Burlington Comprehensive Development Ordinance ("CDO"). Id. In this case, Court concluded that the plain language of 24 V.S.A. § 4454(a) applies to "use" and structural violations. Id. at ¶ 5–8 (reasoning that the language "first occurred" is relevant to ongoing violations such as use violations and noting the Legislature's intent to "streamline title searches and increase confidence in property ownership by limiting the time to enforce all zoning violations") (emphasis in original). Thus, the Court held that the statute of limitations bared the City's NOV, thereby reversing the Environmental Court's Decision. Id. at ¶ 7–8.

Following the Vermont Supreme Court's Decision on In re 204 North Avenue NOV, Appellants here notified the City of their intent to seek relief from a "prior judgment . . . [which] has been reversed or otherwise vacated," pursuant to V.R.C.P. 60(b). See V.R.E.C.P. 3 (providing that specific "actions within the original jurisdiction of the Environmental Court shall be commenced and conducted as civil actions under the Vermont Rules of Civil Procedure"). The City and Appellants thereafter sought to avoid litigation and arrived at a resolution by means of a joint stipulation.

Presently before the Court is Appellant's and the City's Joint Stipulation. The Joint Stipulation requires that:

1. The [Environmental Division] Court shall modify its order issued in the [Hayford II Decision] so that the Appellants, their heirs and assigns, may hereafter use the fifth apartment in the main building as a residential dwelling unit and may continue the use of the rear building as a residential dwelling unit, . . . so that between the two buildings there are a total of six residential dwelling units (five in the main building and one in the rear building.)

2. The Site Plan . . . shall hereinafter be the approved and enforceable exterior site plan for the Property for lot layout, parking spaces and trach receptacle area.

3. All unregistered vehicles shall be removed from the Property so that the parking spaces . . . are available for the occupants of the residential dwelling units.

4. With six units, the Property is currently considered a preexisting nonconforming use under the existing City of St. Albans Land Development Regulations. The parties agree that nothing in this Stipulation would render the property immune from whatever current or future City ordinances are applicable relating to discontinuance of a legal non-conforming use.

5. Appellants . . . resolves that this stipulation resolves all issues in dispute between the parties and hereby release and agree to waive all additional appeals and/or claims for relief relating to claims addressed in City of St. Albans v. Alan and Beverly Hayford, Gregory Benoit and Deborah Kane, 2008 Vt. 36, and In re 204 North Avenue NOV, 2019 Vt. 52 . . . that have or could have been brought relating to the Property and that are or are not resolved by this Stipulation.

Joint Stipulation at 12.

At a status conference conducted on February 8, 2021, this Court directed the parties to address the Court's authority to modify a judgment when the trial court decision was previously affirmed by the Vermont Supreme Court. We address this issue below.

## Discussion

We first address whether this Court has authority to modify its order ("Hayford Decision") after the order has been subsequently affirmed by the Vermont Supreme Court ("Affirming Decision"). Generally, Rule 60(b)(5) provides relief from an order where "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." V.R.C.P. 60(b)(5); V.R.E.C.P. 3 (noting that civil rules are incorporated). Here,

Appellants argue that the 204 North Ave. Decision constitutes a significant change in law meriting relief under Rule 60 (b)(5).

In an analogous case, property owners sought relief from an Environmental Court Decision which had been fully affirmed by the Vermont Supreme Court. *See* Hale Mountain F & G Club Imp. Applic., No. 190-11-10 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. Apr. 17, 2015) (Durkin, J.) (denying a Rule 60 (b)(5) motion where that the property owners sought relief "to the extent [the order] prevents [the owners] from challenging the characterization and review of the structural improvements"). In Hale, this Court noted that Rule 60(b)(5) applies only where there has occurred a "change in factual conditions or law to support a finding that enforcement of the Decision has become inequitable." Id.; *see also* In re Cumberland Farms, Docket No. 196-9-02 Vtec, slip op. at 5–6 (Vt. Envtl. Ct. Apr. 18, 2008) (Wright, J); *see also* 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil2d § 2863 n.19) (stating that Rule 60(b)(5) "does not allow relitigation of issues that have been resolved by the judgment. Instead[,] it refers to some change in conditions that makes enforcement [of the judgment or decree] inequitable"). Indeed, post-judgment relief from an injunctive order is an extreme remedy and "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead [the Court] to change what was decreed after years of litigation with the consent of all concerned." United States v. Swift & Co., 286 U.S. 106, 119 (1932).

Generally, the party seeking modifications under Rule 60(b)(5) bears the burden of showing a "significant change in factual conditions or in law." *See* J.L. v. Miller, 158 Vt. 601, 604 (1992) (*citing* 1997, No. 114 (Adj. Sess.), § 1 (codified as 18 V.S.A. § 7629(d))) (granting relief where the Vermont Legislature adopted legislation expressly stating that "the *J.L. v. Miller* consent judgment [is] no longer applicable"). Where Rule 60(b)(5) is evoked to address a change in law, the Vermont Supreme Court has stated that "clarifications in the law do not provide a basis for modification unless the parties had "'based their agreement on a misunderstanding of the governing law,' and that Rule 60(b)(5) provides relief when continued enforcement of the decree would be inequitable, not merely inconvenient." Id. (*quoting* Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992). Appellants argue that 204 North Avenue's reversal of City of

Burlington v. Richardson, upon which Appellants allege the Hayford Decision was based, falls within the purview of V.R.C.P. 60(b)(5). We disagree.

While 204 North Ave presents a significant change in the statutory interpretation of 24 V.S.A. § 4454, the Hayford I Decision was concluded and affirmed upon grounds independent of the holding in 204 North Ave. 204 North Ave stands for the principle that § 4454(a) applies to use violations but the Decision does not consider whether the adoption of new regulations, which create a new and independent basis for a violation, begin the tolling of a new fifteen-year limitation.[14] In re 204 N. Ave. NOV, 2019 VT 52, ¶ 6–8. In the Hayford Decision, this Court concluded that the "[o]ther than lack of a zoning permit and site plan approval, the operation or use of the rear building as a residential unit did not become a violation until the adoption of the 1998 Land Development Regulations, at which time the [P]roperty as a whole no longer had sufficient area per dwelling unit" and therefore to the "extent the June 2003 complaint . . . was brought under 24 V.S.A. §§ 4444 and 4445 . . . that violation commenced at the earliest in 1998 and is *well within* the time period of the statute of limitations."[15] Hayford I, No. 126-7-04 Vtec at 11 (Feb. 17, 2007) (emphasis added). Thus, since the Hayford Decision concludes that the violation occurred upon the adoption of the 1998 Regulations and was then within the fifteen-year limitation, the question of whether the fifteen-year statute of limitation applies was not reached in this case.

The Hayford Decision does not rely on the contention that 24 V.S.A. § 4454(a) does not apply to use violations as the basis for upholding the City's request for injunctive relief; this contention is only mentioned as a demonstration of a hypothetical. *See* Id. at 11 (noting that

---

[14] The 204 North Ave holding is limited; it concluded that the fifteen-year the statute of limitations requirement contained in 24 V.S.A. § 4454(a) applies to use violations because (1) the plain language does not distinguish between "use" and structural violations; (2) the "first occurred" language is given meaning where there are ongoing violations, such as those that occur in use violation cases; and (3) a statute of limitations that permits the City to pursue use violations so long as they continue runs counter to the interest of judicial efficiency, security of property transactions, and frustrate the statute's purpose. In re 204 N. Ave. NOV, 2019 VT 52, ¶ 2.

[15] The Hayford Decision concluded that "[a]s of the 1998 denial of the Certificate of Occupancy . . . the use of the rear building as a residential unit was not allowed. It was a violation subject to injunctive relief at least as of [7] days after the July 11, 2001 [NOV]" and it "certainly was a violation as of March 6, 2003, when the Court upheld the 2001 [NOV] and the decision was not appealed." Hayford I, No. 126-7-04 Vtec at 13 (Feb. 17, 2007).

"even if the violations began earlier" the Court would apply <u>City of Burlington v. Richardson</u> to analyze whether the use was "continuing or recurring"). The Affirming Decision also recognizes this, noting that the <u>Hayford</u> Decision only addressed whether 24 V.S.A. § 4454(a) applied to use violations brought under 24 V.S.A. § 4470(b) as an "alternative." <u>Hayford II</u>, 2008 VT 36, at ¶ 9 n.1. In the same note, the Affirming Decision also stated that "[b]ecause we agree with the trial court's ruling as to the 1998 violation, we need not address these rationales." <u>Id</u>. (stating that "these rationales" include consideration of whether 24 V.S.A. § 4454(a) bars enforcement of 24 V.S.A. § 4470(b)).

To hold that <u>204 North Ave</u> effectively overrules the <u>Hayford</u> Decision and the subsequent Affirming Decision would both significantly misconstrue the actual basis of both decisions and would run counter to the interests served by Rule 60(b)(5) in providing relief where there exists "a clear showing of grievous wrong."[16] <u>United States v. Swift & Co.</u>, 286 U.S. 106, 119 (1932). Thus, as Appellants have not demonstrated a sufficient change in the law or circumstances, we **DENY** Appellants' and the City's Joint Stipulation.

## Conclusions of Law

For the reasons articulated above, we conclude that we cannot adopt the terms of Appellants' and the City's Joint Stipulation into an order of this Court. We note that nothing in our determinations here should be read as restricting Appellant from seeking new review and approval of their future use of the property, nor should our decision here be read to restrict the parties' ability to enter into an agreement concerning the future use of the property that does not need the approval of this Court.

**So Ordered.**

---

[16] In addition, "[i]n the absence of an express exception in the Vermont Rules of Appellate Procedure, published opinions of the Supreme Court generally create precedent that binds lower courts." <u>State v. Downing</u>, 2020 VT 97, ¶ 35, as amended (Oct. 29, 2020). Here, the Affirming Decision has expressly concluded this case on grounds independent of <u>204 North Ave's</u> contention that 24 V.S.A. § 4454(a) applies to use violations. To reinterpret the Affirming Decision would therefore run counter to the principles of appellate procedure.

Electronically signed on April 20, 2021 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division