VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

Docket No. 24-ENV-00069



| | |
|---|---|
| Town of Colchester,<br>Plaintiff,<br><br>v.<br><br>Kathleen Huard and James Huard,<br>Respondents. | Merits Decision |

This is a zoning enforcement action brought by the Town of Colchester (Town) against Kathleen and James Huard (Respondents) for zoning violations on real property located at 558 Porter Point Road in Colchester, Vermont (the Property).

On May 20, 2025, the Court and parties held an evidentiary hearing at the Costello Courthouse in Burlington, Vermont.[1]  The Town participated through its attorney, Kristen Shamis, Esq. Respondents appeared and were self-represented.

### Findings of Fact

1.  This is a zoning enforcement action commenced by the filing of a complaint[2] by the Town of Colchester (Town) against Kathleen Huard, and later James Huard, for the unpermitted storage of unregistered vehicles at 558 Porters Point Road (the Property) in violation of the Town of Colchester Development Regulations (the Regulations).

2.  Respondent Kathleen Huard owns the Property, having inherited it from her mother in 2013. Her adult son, James Huard, also resides at the Property and is the owner of the unregistered vehicles, which presently include an Impala, a Mustang and an Oldsmobile.

---

[1]  The hearing was scheduled as a hybrid motion/evidentiary hearing.  At trial, the Town formally withdrew its previously filed motion for default judgment.

[2]  The original complaint, filed on August 8, 2024, was only against Kathleen Huard, the landowner.  Ms. Huard filed an answer to that complaint on August 30, 2024, in which she admitted all but two of the Town's allegations.  Later, on December 9, 2024, the Town amended its complaint to add Ms. Huard's adult son, James Huard, as a Respondent since he admitted being the owner of the vehicles at issue.  Neither Respondent filed an answer to the amended complaint.

3. The Town Development Manager & Zoning Administrator, Zach Maia, first became personally aware of the unpermitted storage of unregistered vehicles on the Property in November 2021.

4. The violations were ongoing before that time, dating back, at least, to a 2008 Stipulation and Order entered into between the Town and Kathleen Huard.[3]

5. On page 2, paragraph 2 of the 2008 Stipulation and Order, Respondent Kathleen Huard agreed that she would not store an excess number of unregistered vehicles on the Property without first obtaining all necessary permits.

6. On January 13, 2023, the Zoning Administrator sent Respondent Kathleen Huard a Notice of Violation (the 2023 NOV).

7. The 2023 NOV indicated that Respondent was in violation of Regulations Article 2.09-B(2)(h) for storing more than one unregistered vehicle on the Property. The NOV directed Respondent to remove three of the unregistered vehicles from the Property.

8. The 2023 NOV was not appealed.

9. On July 19, 2024, the Zoning Administrator sent Respondent Kathleen Huard a second Notice of Violation (the 2024 NOV) for storing an additional unregistered vehicle on the Property. The NOV directed Respondent to remove four of the unregistered vehicles.

10. The 2024 NOV was not appealed.

11. Regulations Article 2.09-B(2)(h)[4] provides that "[n]o more than one unregistered vehicle may be kept on a lot."

12. On July 18, 2024 there were five unregistered vehicles on the Property. Town's Exhibit 7.

13. On October 1, 2024 there were two unregistered vehicles on the Property, with the Mustang parked in very close proximity to the travelled way of Porter's Point Road. Town's Exhibit 8.

14. On December 3, 2024, February 26, 2025, and May 6, 2025 there were at least three unregistered vehicles on the Property. Town's Exhibits 9–11.

15. The location of the Mustang on the Property has not changed since at least July 18, 2024. Town's Exhibits 7-11. The Mustang's proximity to the roadway creates safety/sight line issues —

---

[3] Ms. Huard's deceased mother, Tina Harshbarger, was also a party to the Stipulation and Order, which was approved by this Court on October 15, 2008, and provides, in its Statement of Facts, that "[p]rior to the date of this stipulation, Defendants had an excess number of unregistered vehicles on the subject property." Town's Exhibit 3.

[4] The Town amended its Regulations in the period between issuance of the 2023 and 2024 NOVs. However, Article 2.09-B(2)(h) was not amended, and remains the applicable provision for both NOVs.

particularly in winter when the Mustang and Oldsmobile are covered with snow — for passing vehicles and vehicles attempting to exit the Property, which Respondents acknowledge.

16. Respondents admit, and do not contest, that the vehicles on the Property are unregistered.[5]

17. Since issuing the 2023 NOV, the Town has received complaints from neighbors about the ongoing violations, including two written "complaints for action" by the Town and up to five phone calls.

18. The above-referenced complaints have included the following concerns: compliance with the Town's regulations; the general location of the parked vehicles and their impact on sight lines; the environmental impacts of the parked vehicles; and the location of the parked vehicles within the Town's right of way and setbacks.

19. Respondents have not complied with Article 2.09-B(2)(h) since the Town issued the 2023 NOV.

20. As of May 20, 2025, when the Zoning Administrator visited the Property, the violations were/are still occurring.

21. The Town has incurred $7,218.27 in legal fees and expenses to bring the Property into compliance.

22. Respondent Kathleen Huard is retired and her principal source of income is Social Security. Respondent James Huard is a presently unemployed mechanic.

23. Respondent Kathleen Huard is aware of the Town's prohibition on keeping more than one unregistered vehicle and did not challenge the NOVs because she "knew they were right." She is also aware of the safety issue related to how the Mustang is parked. Although Ms. Huard has had vehicles towed from the Property in the past, she would prefer that the Town or Court order any towing of the cars presently on the Property. She acknowledges her responsibility to bring the Property into compliance with the Zoning Regulations.

24. Respondent James Huard has a strong emotional attachment to the unregistered vehicles on the Property, at least one of which (the Oldsmobile) he has owned for over 20 years. He has prevented Ms. Huard from having the cars presently on the Property towed.

25. Mr. Huard is aware of the zoning violations and the Town's safety concerns, but he currently lacks the resources either to register or to remove the vehicles, nor does he have a place off the

---

[5] This is further evidenced by the absence of license plates on most, if not all, of the unregistered vehicles. During this case, Respondents directed questions to both the Court and the Town regarding what steps they must take to register the vehicles. The Court and the Town have both directed Respondents to the Vermont Department of Motor Vehicles for information regarding registration requirements.

3

Property to move the unregistered cars to today. Mr. Huard is also concerned that it would cost more to have the cars towed than to register them. He seeks additional time to obtain the money that he needs to have them registered with the State.

### Discussion

In a zoning enforcement action, the Town has the burden of proving the existence of a violation. See In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 15, 2011) (Durkin, J.) (explaining that in a zoning enforcement action, the Town bears the burden of proof). Where, as here, the NOVs were never appealed, the Town merely needs to show that the violations are ongoing and continuous for the period in which the Town seeks penalties. As the Vermont Supreme Court has explained, municipalities "need not produce evidence of a continuing violation for each and every day." City of Burlington v. Sisters & Brothers Inv. Grp., LLP, 2023 VT 24, ¶ 15 (quoting In re Jewell, 169 Vt. 604, 606 (1999)). Instead, municipalities may sustain their burden of proof with evidence that "weave[s] a sufficient pattern of violations for the court to infer a continuing violation for some or all of the period for which the [municipality] requests that the court impose penalties." Id.

By failing to timely appeal the NOVs, those decisions are now final and binding. 24 V.S.A. § 4472(d). The Town provided credible documentary evidence and testimony that those violations listed in the NOVs are ongoing and continuous up to and including the date of trial. The seven-day cure period provided in the 2023 NOV expired on January 20, 2023. Trial was held on May 20, 2025. Accordingly, Respondent Katheleen Huard is liable for 851 days of violation. 24 V.S.A. § 4451(a) ("No action may be brought under this section unless the alleged offender has had at least seven days' warning notice by certified mail."); § 4451(a)(3) ("Each day that a violation continues shall be a separate offense.").

When determining the amount of a fine for a zoning violation under 24 V.S.A. § 4451, the Court has broad discretion once it has determined the existence of the zoning violation. Sisters & Brothers Inv. Grp., 2023 VT 24, ¶ 18. The Court endeavors to impose penalties calculated to "remove the economic benefit and any avoided costs achieved by the defendant from the violation, as well as to compensate the enforcement entity generally for the legitimate costs of bringing the enforcement action." Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.) (citing City of St. Albans v. Hayford, 2008 VT 36, ¶¶ 15-18, 183 Vt. 596). ). The Court may also consider the factors enumerated in the state environmental enforcement statute in setting a

penalty. 10 V.S.A § 8010. Typically, the Court considers several relevant factors, including: (1) the actual or potential impact on public health, safety, welfare, and the environment; (2) the presence of mitigating circumstances; (3) whether respondent knew or had reason to know the violation existed; (4) the respondent's record of compliance; (5) the deterrent effect of the penalty; (6) the Towns actual costs of enforcement; and (7) the length of time the violation existed. Id.

In this case, because the NOVs were only issued to Kathleen Huard, the Town acknowledges that it is only entitled to seek penalties against her. Accordingly, we review the penalty criteria only with respect to Ms. Huard and the Town.

As an initial matter, it does not appear that Kathleen Huard received any economic benefit or substantial avoided costs in connection with the violations in this case. James Huard has received an economic benefit and avoided costs as a result of the violations but, as noted above, he is not the recipient of the NOVs.

With respect to the first § 8010 factor, listed above, the Town argues that at least one of the unregistered vehicles, the Mustang, is parked within the Town's right of way and creates a traffic safety issue by blocking sight lines for passing/exiting traffic. We agree, and so do both Respondents. Accordingly, we conclude that the violations have a notable impact on public safety which justifies a meaningful penalty amount.

With respect to mitigating circumstances, we consider whether the Town has unreasonably delayed in bringing the enforcement action. 10 V.S.A. § 8010(b)(2). Here, the Town offered no explanation for why it waited over a year and a half after issuing the 2023 NOV to file an enforcement action in this Court. Nor did the Town explain its rationale for issuing a second NOV in 2024. The Court is aware that there were ongoing, but ultimately unsuccessful, attempts to settle these violations outside of court. However, such negotiations may also occur during the pendency of an enforcement action, which is often a useful tool in encouraging compliance. Accordingly, we conclude that the delay in bringing this enforcement action is a significant mitigating factor in our penalty calculations.

We now turn to the third and fourth factors, which address whether Respondent Kathleen Huard knew or had reason to know the violations existed, as well as Ms. Huard's record of compliance. Here, Ms. Huard has been aware of the zoning violations at least since signing the 2008 Stipulation and Order. She freely admits that she knew of Article 2.09-B(2)(h)'s requirements. Ms. Huard also previously had two cars towed off the Property. However, since that time, she has not taken any

5

affirmative action to bring the Property into compliance.[6]  This lengthy period weighs in favor of a significant penalty.

Similarly, we attempt to reach a penalty amount that will have a deterrent effect against future violations.  At trial, Ms. Huard explained that she wants the cars removed from the Property.  We believe that this desire is genuine, but ultimately Ms. Huard is liable for the violations and is responsible for bringing the Property into compliance.  Ms. Huard also explained that her only income is from social security.  Accordingly, we weigh these factors in determining a reasonable penalty amount that will achieve compliance and deter future violations.

Lastly, as of May 20, 2025, the Town has incurred a total of $7,218.27 in legal fees and expenses in connection with this case.  See Town's Post Trial Affidavit of Costs and Attorney Fees.  While the Town's costs of enforcement are a relevant factor in our analysis, the Court is not obligated to design a penalty "to allow a town to recover all of its out-of-pocket expenses."  Town of Hinesburg v. Dunkling, 167 Vt. 514, 529 (1998).  Rather, "the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice." Id.  Here, the Town's costs of enforcement exceed what would constitute a reasonable penalty under the circumstances and would likely have a negative effect on Respondent's ability to achieve compliance given her fixed monthly income.

Taking these factors into consideration, particularly the traffic safety concerns, the length of the violation, the delay in bringing enforcement, and the Town's costs of enforcement, we conclude that the facts of this case warrant a penalty amount of $3 per day (representing one dollar per unregistered vehicle).  The violations at issue occurred for 851 days, which leads to a total penalty of $2,553.

In additional to penalties, the Town is entitled to injunctive relief.  See 24 V.S.A. § 4452 (authorizing a municipality to seek an injunction to abate a zoning violation); see also Town of Sherburne v. Carpenter, 155 Vt. 126, 129 (1990) (explaining the general rule that where "a municipality or public agency [] seek[s] an injunction in order to enforce compliance with a local ordinance or state statute, and is silent as to the injury caused… all that must be shown is a violation of the ordinance.") (citation omitted).  Unlike 24 V.S.A. § 4451, there is no statutory or other legal requirement to issue a notice of violation prior to commencing an action under § 4452 for injunctive relief to prevent an act constituting a violation, and such an action may be commenced against any and all potential violators.

---

[6] The Court recognizes that Ms. Huard, while acknowledging her obligations under the Zoning Regulations, may well have chosen "family harmony" over further efforts toward zoning compliance.

<u>Id</u>.  As explained above, the Town has met its burden of proving the existence of an ongoing zoning violation.  Accordingly, the Town is entitled to injunctive relief against both Respondents.

<u>**Conclusion**</u>

Respondent Kathleen Huard is **ORDERED** to pay the Town $2,553 within one year of the date of this Decision.

In addition, the Town is entitled to injunctive relief, pursuant to 24 V.S.A. § 4452, by way of an order requiring both Respondents to comply with the Bylaws.  Accordingly, Respondents are **ORDERED** to bring the Property into compliance with Article 2.09(B)(2)(h) of the Regulations within 60 days of the date of this Merits Decision.  Respondents may achieve compliance by registering all but one of the unregistered vehicles with the State of Vermont, or by having the excess vehicles towed (or otherwise removed) from the Property.[7]

Failure to bring the Property into compliance within 60 days of the date of this Merits Decision may result in future contempt proceedings.  Such contempt proceedings could result in additional penalties, as well as authorization for the Town (or its agent) to enter the Property and tow the vehicles, with Respondents responsible for the costs associated with such action.  It is in Respondents' best interests to register or remove the excess unregistered vehicles well before then.

Electronically signed on May 22, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division

---

[7] Respondents may also consider selling one or more unregistered vehicles and using the funds to register other unregistered vehicles.